## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

James A. Burk, Jr., et al.,

            Plaintiffs,

       v.

City of Columbus, et al.,

            Defendants.

Case No. 2:20-cv-6256

Judge James L. Graham

Magistrate Judge Chelsey M. Vascura

---

## DEFENDANTS CITY OF COLUMBUS, JOSEPH FIHE AND KEVIN WINCHELL'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, Defendants City of Columbus, Joseph Fihe and Kevin Winchell respectfully move this Court for summary judgment on all claims asserted against them in this civil action by Plaintiffs James Burk and Summer Hilfers. A supporting memorandum is attached hereto and supporting exhibits have been filed herewith and separately.

Respectfully submitted,

/s/ Samantha M. Hobbs
Samantha M. Hobbs (0098726)
Alexandra N. Pickerill (0096758)
Assistant City Attorneys
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 N. Front Street, 4th Floor
Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
smhobbs@columbus.gov
anpickerill@columbus.gov

*Attorneys for Defendants*

## TABLE OF CONTENTS

MEMORANDUM IN SUPPORT ..................................................................................... 2

I.     PRELIMINARY STATEMENT ...................................................................... 2

II.    STATEMENT OF FACTS .............................................................................. 2

III.   STANDARD OF DECISION ........................................................................... 6

IV.    LAW AND ARGUMENT................................................................................. 7

       A.    DEFENDANTS FIHE AND WINCHELL ARE ENTITLED TO SUMMARY JUDGMENT......... 7

       B.    DEFENDANT CITY OF COLUMBUS IS ENTITLED TO SUMMARY JUDGMENT ............. 23

V.     CONCLUSION ............................................................................................... 36

CERTIFICATE OF SERVICE ..................................................................................... 36

## MEMORANDUM IN SUPPORT

## I.    PRELIMINARY STATEMENT

This civil action arises from a July 7, 2020 incident involving the investigation and temporary detention of Plaintiff James Burk by Defendant Columbus Police Officers Joseph Fihe and Kevin Winchell (together, the "Defendant Officers") while present at 3359 Edgebrook Drive in Dublin, Ohio. Plaintiff Burk brought claims against each of the Defendant Officers for violation of 42 U.S.C. § 1983 and for state law battery[1] and intentional infliction of emotional distress. Plaintiff Burk asserts a claim against the City of Columbus (the "City") for violation of 42 U.S.C. § 1983. Plaintiff Hilfers asserts a derivative claim against each Defendant Officer for loss of consortium.

In this motion, Defendant Officers Fihe and Winchell, and the City of Columbus respectfully seek summary judgment on all claims asserted against them.

## II.    STATEMENT OF FACTS

On July 7, 2020, at approximately 1:55 P.M., the Columbus Division of Police ("CPD") 9-1-1 emergency dispatch center received a call from Sarah Al-Maliki. Ex. 1, DISPLAY EVENT PRINTOUT; Ex. 2, AL-MALIKI AFFIDAVIT. Sarah told the dispatcher that she was home alone with her children and that there was a man knocking on her door and claiming to be the police. Ex. 3, 911 CALL AT 0:15-:22. Sarah informed dispatch that when she told the man she would not open the door for him because her husband was not home, the man attempted to open the door. ID AT 0:22-:35. Sarah described the suspect as a white man in a grey shirt and beige pants. ID AT 1:10-1:27. Sarah confirmed for the dispatcher that when she asked to see a badge, the man showed her

---

[1] Plaintiff Burk's Complaint does not offer a code section or title for his third claim for relief but instead vaguely titles it as "Count Three: Malicious/Willful/Wanton/Reckless Misconduct." Defendants address this claim as the state law companion claim to Plaintiff Burk's 42 U.S.C. § 1983 claim for excessive force.

a piece of paper without a name or number and did not come in a marked police car. ID AT 1:28-2:10. While Sarah was on the phone, the man was still knocking on her door. ID AT 2:10-2:25. At the direction of the dispatcher, Sarah asked the man what department he was with and he told her ATF. ID AT 2:45-3:00. The dispatcher advised Sarah not to open the door and to let the responding CPD officers sort it out. ID AT 3:00-3:15. Sarah told the man she was on the phone with the police. ID AT 3:30-3:40. The man told Sarah that his name was Jim Burk and gave her a badge number. ID AT 3:50-4:05. There was no way for CPD to verify that badge number. LEIGHTON DEPO 55:2-6. Sarah told the man the police were on their way. Ex. 3, 911 CALL AT 4:30-4:40. Though he was trained by ATF to inform, ahead of time, local law enforcement that he would be attempting a firearm retrieval in their area, Plaintiff Burk did not give any notice to CPD that he would be at Sarah's house. ATF DEPO. BY WRITTEN QUESTION; BURK DEPO. 122:13 – 123:5.

CPD Officers Joseph Fihe and Kevin Winchell were dispatched to the scene and told there was a possible burglary and impersonation of a police officer by a white male in a grey shirt and tan pants. FIHE DEPO. 13:19 – 15:12. Officer Fihe arrived at Sarah's house first and he saw Plaintiff Burk standing by Sarah's door in a grey shirt and tan pants. FIHE DEPO. 42:5-22; EX. 4, FIHE BWC AT 5:05 – 5:17[2]. Plaintiff did not have anything visible which identified him as an ATF agent. VEHR DEPO, EX 7 P5; EX. 4, FIHE BWC. Officer Fihe got out of his cruiser and told Plaintiff twice to "turn around and let me see your hands." Ex. 4, FIHE BWC AT 5:10-5:17. When Officer Fihe gave the command, Plaintiff was facing Officer Fihe and he continued to do so instead of turning around and facing away. FIHE DEPO. 62:20 – 63:8; 65:10-14. Plaintiff responded to Officer Fihe's

---

[2] Exhibits 3 and 4 to this motion are audio/visual files. These files can be found on a flash drive that Defendants will manually file with the Court upon Court's approval of Defendants' Motion for Leave to Manually File a Flash Drive Containing Audio and Visual Exhibits (DOC. 50, PAGEID #116-17) filed on August 14, 2023.

commands by yelling "I'm a federal fucking agent!" Ex. 4, FIHE BWC AT 5:17-19; BURK DEPO. 167: 23 – 168: 5.

Officer Fihe was suspicious of Plaintiff's claim because, in starting the interaction by yelling profanities, Plaintiff was not conducting himself as any law enforcement Officer Fihe had ever met. FIHE DEPO. 38:14 – 39:7. Officer Fihe drew his service weapon and gave Plaintiff five commands to get on the ground, with which Plaintiff refused to comply. Ex. 4, FIHE BWC AT 5:20 – 5:37. Plaintiff yelled back, "I'm not getting on the ground, I'm a federal agent!" Ex. 4, FIHE BWC AT 5:35-5:37. Despite understanding that Officer Fihe's commands were an order to get on the ground, Plaintiff instead walked off the porch and in Officer Fihe's direction. BURK DEPO. 176:3-6; FIHE DEPO. 84:1-7; Ex. 4, FIHE BWC AT 5:20 – 5:35. Officer Fihe then aired a code 10-3, officer in trouble, because he perceived Plaintiff to be a threat due, in part, to the gun he could see on Plaintiff's hip. FIHE DEPO. 86:17 – 87:12.

Plaintiff continued to escalate the situation by refusing to respond to lawful orders and yelling. FIHE DEPO. 70:12-22. Officer Fihe then said "get on the ground, we'll figure it out" and Plaintiff again refused to comply. Ex. 4, FIHE BWC AT 5:43 – 5:55. After more back and forth, Officer Fihe told Plaintiff, "get on the ground so I can find out who you are" and Plaintiff responded, "it ain't happening!" Ex. 4, FIHE BWC AT 6:12-6:16; BURK DEPO. 184:17-21. During this interaction, Plaintiff dropped his hands to his waist and at another time reached for his waist which Officer Fihe, per his training and experience, perceived as dangerous. FIHE DEPO. 84:25 – 85:1; 91:17 – 93:4. Officer Winchell arrived on scene and Plaintiff finally, after ignoring ten commands to do so, got himself on the ground. Ex. 4, FIHE BWC AT 6:40-6:45. The Officers attempted to detain Plaintiff by putting him in handcuffs so they could investigate the burglary in

progress and his claim of ATF status. FIHE DEPO. 102:4-9. Plaintiff needed to be secured because the Officers did not know if he was an officer, a criminal, or both. FIHE DEPO. 104:1-9.

Plaintiff would not put his hands behind his back, despite commands to do so. EX. 4, FIHE BWC AT 6:50 – 7:00; VEHR DEPO, EX 7 P3. Plaintiff was jerking his hands away from the Officers and was starting to reach around, while at the same time looking in the direction of his holstered firearm. EX. 4, FIHE BWC AT 6:50-7:00; VEHR DEPO., EX 7 P3, 5. Officer Fihe used his hand to turn Plaintiff's head away from the gun and was finally able to get one cuff on Plaintiff's left wrist. EX. 4, FIHE BWC AT 7:00-7:20; VEHR DEPO., EX 7 P3. Plaintiff continued to resist and not comply with orders to put both hands behind his back. EX. 4, FIHE BWC AT 7:20-7:40.

Plaintiff's firearm was on the right side of his body, meaning the un-cuffed hand could reach the firearm. VEHR DEPO., EX 7 P4. Plaintiff was warned that if he did not put his right arm behind his back, he would be tased. EX. 4, FIHE BWC AT 7:35-7:45. Ultimately, due to his turbulent behavior, refusal to comply with lawful orders, resisting cuffs, and proximity to his firearm, the level of force needed to be increased. VEHR DEPO., EX. 7 P3. Officer Fihe decided that using the TASER was the proper next step because he believed that chemical spray would only intensify Plaintiff's already-combative behavior. VEHR DEPO., EX 7 P4. Officer Fihe removed the TASER cartridge and used a stun on Plaintiff's back. EX. 4, FIHE BWC AT 7:43-7:53; VEHR DEPO., EX. 7 P.3. It was only after the TASER was used that the Officers were finally able to secure Plaintiff in handcuffs. EX. 4, FIHE BWC AT 7:50-7:58; VEHR DEPO., EX 7 P3.

After he was handcuffed, Plaintiff continued yelling obscenities at the Officers. EX. 4, FIHE BWC AT 8:30-9:02; VEHR DEPO., EX 7 P3. Officer Fihe was finally able to retrieve Plaintiff Burk's credentials out of his pocket, but did not believe that Plaintiff was an actual federal agent given his behavior and the ease of falsifying badges. EX. 4, FIHE BWC AT 8:58-9:04; FIHE DEPO. 100:20 –

101: 4; Vehr Depo., Ex 7 p3-4; Leighton Depo. 88:11 – 24. Officers took Plaintiff to the cruiser where, for approximately 40 seconds, he refused to put his legs in and allow the door to be shut. Ex. 4, Fihe BWC at 10:02-10:38. Officer Fihe had to walk to the other side of the cruiser and pull Plaintiff in while Officer Winchell pushed. Ex. 4, Fihe BWC at 10:02-10:38. Plaintiff requested an ambulance and was told that a medic was en route, at which point Plaintiff indicated he did not need a medic. Ex. 4, Fihe BWC at 10:06-10:11.

Plaintiff was subjected to discipline by the ATF, who removed him from his position for his "conduct unbecoming a special agent" in this incident before an appeal of that decision resulted in a settlement that allowed him to be removed for "medical inability to perform" instead. ATF Resp. to Depo. By Written Question, Ex. 1: Notice of Final Decision on Proposed Termination.

## III.    STANDARD OF DECISION

Summary judgment is appropriate "if [Defendants show] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Even though the Court must view all of the evidence and draw all reasonable inferences in Plaintiffs' favor, Plaintiffs must still identify specific facts within the record showing there is a genuine issue of material fact. *See Muncie Power Prods. v. United Techs. Auto.,* 328 F.3d 870, 873 (6th Cir. 2003). Not just any dispute of fact will do. The "dispute must present a *genuine* dispute of *material* fact." *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (emphasis in original). A fact is "material" only if its resolution "might affect the outcome of the suit under the governing law," and a dispute is "genuine" only if the "evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 251-52 (1986). The evidence with respect to a particular factual dispute cannot be "so one-sided that [Defendants] must prevail

as a matter of law," and [Plaintiffs] cannot rely upon a "mere existence of a scintilla of evidence in support of [their] position." *Id*. at 251-52. In addition, to survive a motion for summary judgment, Plaintiffs must provide evidence that creates a genuine issue of material fact that is not based on "mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir.2004) (quoting *Moody v. St. Charles County,* 23 F.3d1410, 1412 (8ᵗʰ Cir. 1994), internal quotations omitted).

## IV.    LAW AND ARGUMENT

### A.  DEFENDANTS FIHE AND WINCHELL ARE ENTITLED TO SUMMARY JUDGMENT

> 1.  *Defendants Fihe and Winchell are entitled to qualified immunity on the federal claims against them because they used only that force which was objectively reasonable*

#### Qualified Immunity Standard

Plaintiff Burk has asserted a Fourth Amendment, excessive force claim against both Defendant Officers Fihe and Winchell under 42 U.S.C. §1983. For the following reasons, the Defendant Officers are entitled to qualified immunity and summary judgment for these claims.

Qualified immunity shields government officials from liability for civil damages under §1983 insofar as their actions do not violate any clearly established statutory or constitutional rights of which a reasonable person would have known at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "ordinarily applies unless it is obvious that [a] reasonably competent official would have concluded that the actions taken were unlawful," *Chappell v. Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009), and it affords "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, (1986)).

For his excessive force claim to survive, Plaintiff must demonstrate that the Defendant Officers are not entitled to qualified immunity. *See Chappell*, 585 F.3d at 907. Consequently, Plaintiff bears the burden of showing that, when the evidence is viewed in his favor: (1) a constitutional right was violated; and (2) that right was clearly established at the time of the violation. *Id.* Because Plaintiff fails to demonstrate either prong of this test, he fails to carry this burden. *Id.* Courts have discretion to decide which of the "two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

**Excessive Force Law**

The Supreme Court has held excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The objective reasonableness test requires an analysis as to whether the individual officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *Id.* at 397; 444-445. Additionally, the facts must be viewed from the perspective of a reasonable officer on scene, rather than with the benefit of hindsight when reviewing the totality of the circumstances and objective reasonableness of force. *Id.* at 444-445. This analysis contains a built in measure of deference to the officer's on the spot judgment of the level of force necessary in light of the circumstances. *Id.* at 445.

Because "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" *Id.* at 396-397, the court is not to substitute its own ideas as to what is proper police procedure for the instantaneous decision of the officer at the scene. *England v. Schrand*, 2012 U.S. Dist. LEXIS 176138 at *19 (S.D. Ohio 2012). That is, courts "must never

allow the theoretical, sanitized world of [their] imagination to replace the dangerous and complex world that policemen face every day." *Id.* "After all, 'what constitutes reasonable action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.'" *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1163 (6th Cir. 1996)).

"The application of this 'reasonableness' test requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Chappell*, *585 F.3d* at 908, quoting *Graham* at 396. Nevertheless, the *Graham* factors do not constitute an exhaustive list; "the ultimate question is 'whether the totality of the circumstances justifies a particular sort of seizure.'" *Simmonds v. Genesee County*, 682 F.3d 438, 444 (6th Cir. 2012).

"Also irrelevant . . . is whether or not the officer had other means of force at his disposal. '[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances.'" *Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008)(citing *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996)). The mere existence of other options, even if Plaintiff would have preferred them, does not render unreasonable the decisions made by officers.

Active resistance is more than just mere noncompliance, "there must be something more." *Eldridge v. City of Warren*, 533 Fed. Appx. 529, 535, 2013 U.S. App. LEXIS 16261, 2013 FED App. 0715N (6th Cir.), 2013 WL 3968761. It includes "physically struggling with, threatening, or disobeying officers. And it includes refusing to move your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Rudlaff v. Gillispie*, 791 F.3d 638,

641-42, 2015 U.S. App. LEXIS 11304, 2015 FED App. 0133p (6th Cir.); *see also Stanfield v. City of Lima*, 727 Fed. Appx. 841, 847, 2018 FED App. 0136N (6th Cir.).

In some circumstances, an excessive force claim can be predicated on an officer's decision to point a firearm at an individual. An officer's decision to point a firearm at a suspect "communicates the implicit threat that if the individual does not comply with the [] demands, the [one pointing the firearm] will shoot the individual." *Vanderhoef v. Dixon*, 938 F.3d 271, 2019 U.S. App. LEXIS 24897, 2019 FED App. 0204P (6th Cir.), 2019 WL 3938640 (finding that it was excessive force to point a firearm at an unarmed civilian who was suspected of only traffic violations)(citing *United States v. Bolden*, 479 F.3d 455, 461 (6th Cir. 2007)). For this reason, pointing a firearm at a suspect can amount to excessive force because it may cause an unreasonable detention if the *Graham* factors are not met. *Id*. However, the Fourth Amendment protects citizens from having a gun pointed at them only when there is *no suggestion* of danger. *Martin v. Coyt*, No. 1:10-CV-00176-R, 2012 U.S. Dist. LEXIS 61997, 2012 WL 1574823, at \*14 (W.D. Ky. May 3, 2012); *Vanderhoef v. Dixon*, 938 F.3d 271, 280.

The Sixth Circuit "has long recognized that the right to make an...investigatory stop necessarily carries with it the right to use some degree of physical coercion...to effect it." *Lee v. Hefner*, 136 F. App'x 807, 812 (6th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); *see also United States v. Paul*, 2022 U.S. Dist. LEXIS 195652, 2022 WL 16818245. Ultimately, the test for whether a detention for a precautionary search is allowable is whether a "reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *United States v. Pacheco*, 841 F.3d 384, 390, 2016 U.S. App. LEXIS 19495 (6th Cir.)(quoting *United States v. Noble*, 762 F.3d 509, 521-22 (6th Cir. 2014)); *see also United States v. McCallister*, 39 F.4th 368,

373, 2022 FED App. 0148P (6th Cir.); *United States v. Paul* at 15-16. In *United States v. Paul*, the Sixth Circuit held that the 20 minute detention, and the force used to obtain it, of an armed robbery suspect was reasonable to search the suspect and investigate the crime of robbery. *United States v. Paul* 2022 U.S. Dist. LEXIS 195652.

### Excessive Force – Defendant Officers

Given the facts of this case, the Defendant Officers' uses of force against Plaintiff Burk were objectively reasonable and no Constitutional violation occurred. The Defendant Officers were dispatched to 3359 Edgebrook Drive on a call for a burglary in progress. *See* Ex. 1, DISPLAY EVENT PRINTOUT; EX. 2, AL-MALIKI AFFIDAVIT. The Defendant Officers arrived at this location in order to investigate the claim and determine whether a crime was committed. When they arrived, Plaintiff Burk, the suspected attempted burglar, was armed with a firearm, responded with profanity and refused to comply with lawful commands to turn around and show his empty hands. Ex. 4, FIHE BWC. Like in *Paul*, the Defendant Officers here had a reasonable belief that Plaintiff Burk was in the commission of a felony offense – here, attempted burglary – and their decision to detain him while investigating that crime was similarly reasonable. *See United States v. Paul* 2022 U.S. Dist. LEXIS 195652

> a. The Defendant Officers' decision to draw their firearms was objectively reasonable in light of the totality of the circumstances

Defendant Fihe's decision to draw his weapon after exiting his vehicle does not rise to an excessive use of force. Such an action can only be categorized as excessive force if detention of the suspect is unreasonable. *Martin v. Coyt*, 2012 2012 WL 1574823, at *14. Here, Officer Fihe had reason to believe that the suspect had been or was committing an attempted burglary and may be impersonating a police officer. Detention by way of holding a suspect at gunpoint is a reasonable response to encountering a suspected burglar at the scene of the alleged crime. *See*

*Stevens-Rucker v. City of Columbus*, 739 Fed. Appx. 834, 2018 U.S. App. LEXIS 18683, 2018 FED App. 0333N (6th Cir.), 2018 WL 3359554 (holding that it was not excessive force to detain an unarmed burglary suspect at gunpoint and later use deadly force); *see also Crisp v. City of Kenton,* 1998 U.S. App. LEXIS 7206, 1998 WL 180561, at *5 (6th Cir. April 8, 1998) (affirming summary judgment for defendant officers who pointed their guns at a burglary suspect while another officer handcuffed him); *Dorsey v. Barber,* 517 F.3d 389, 401-402 (6th Cir. 2008); *Humphrey v. Mabry,* 482 F.3d 840, 849 (6th Cir. 2007) ; *Houston v. Clark County,* 174 F.3d 809, 815 (6th Cir. 1999) ; *Leber v. Smith,* 773 F.2d 101, 105 (6th Cir. 1985); *Willis-Abner v. Parsons*, 2008 U.S. Dist. LEXIS 55202.

Officer Fihe's – and later Officer Winchell's – belief that Plaintiff Burk had committed, or was presently committing, an attempted burglary was reasonable based on the totality of the circumstances. The homeowner called 911 and described a burglary in progress. EX. 1, DISPLAY EVENT PRINTOUT; EX. 2, AL-MALIKI AFFIDAVIT. Sarah described a man who was forcefully attempting to enter her home's front door and who would not leave despite her requests for him to do so. This man did not have a warrant or other permission to enter her home and he did not show her a badge. BURK DEPO. 149:19 – 150: 14. Instead, the suspect showed Sarah a piece of paper which had his name, agency and position and which was unrecognizable to Sarah. ID; EX. 2, AL-MALIKI AFFIDAVIT AT ¶ 16; BURK DEPO., EX. 14. Upon arrival at the scene, Officer Fihe found Plaintiff Burk in front of Sarah's front door and matching the description she gave for the alleged burglar. EX. 4, FIHE BWC. This series of events leads to the reasonable and logical conclusion that Plaintiff Burk was the suspected attempted burglar described by Sarah.

The Defendant Officers' initial skepticism as to whether Plaintiff Burk was a federal agent was also objectively reasonable based on the information that they had when they arrived on scene.

This doubt is made all the more reasonable by Plaintiff Burk's conduct which was in conflict with his federal agent training and what the Defendant Officers would expect to see when encountering a federal law enforcement officer. ATF DEPO. BY WRITTEN QUESTION; FIHE DEPO. 14:4-12; 31:12-21; 95:16-24; 103:25 – 104:9. Such "unusual conduct" will give rise to a reasonable and objective inference that a suspect is breaking the law by impersonating a police officer. *O'Malley v. City of Flint*, 652 F.3d 662, 670, 2011 U.S. App. LEXIS 15367, 2011 FED App. 0194P (6th Cir.); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Plaintiff Burk did not have his credentials visible or available for the Defendant Officers to see or inspect when they arrived. BURK DEPO. 127:24 – 128:7; EX. 4, FIHE BWC. Plaintiff Burk was not dressed in any law enforcement uniform or other clothing that would insinuate he worked with ATF. EX. 1, DISPLAY EVENT PRINTOUT; EX. 4, FIHE BWC. He was not driving a marked ATF or law enforcement vehicle. BURK DEPO. 128:8-12. The suspect then proceeded to act in a manner contrary to what is required for ATF agents by refusing to comply with the orders of local law enforcement. ATF DEPO. BY WRITTEN QUESTION #45. All of this contributed to the Defendant Officers' reasonable belief that Plaintiff Burk was likely committing a crime and may not be a law enforcement officer.

The fact that the Defendant Officers later learned that Plaintiff Burk was a registered law enforcement officer does not change the reasonableness of their initial skepticism. The reasonableness of the Defendant Officers' actions cannot be judged with the benefit of hindsight and cannot be judged from the perspective of Plaintiff Burk, who knew he worked for ATF at that time. *Graham* 490 U.S. 386, 444-445; *Kirilova v. Braun*, 2022 U.S. App. LEXIS 2649, 2022 FED App. 5649P (6th Cir.), 2022 WL 247751. At the time that Plaintiff Burk was detained, the Defendant Officers reasonably believed, based upon the totality of the information available to them, that he was an attempted burglary suspect who was armed and had merely claimed to be a

law enforcement officer. Burglary is a felony of the second degree and attempted burglary is a felony of the third degree. O.R.C. § 2911.12. Impersonating a police officer in this scenario is at least misdemeanor of the first degree, if not a felony of the third degree. O.R.C. §§ 2921.51(D), (E). The first *Graham* factor, severity of the crime at issue, weighs in favor of the Defendant Officers who reasonably believed Plaintiff Burk to be a potential burglary and impersonation suspect. The second factor of *Graham*, the threat posed by the suspect, also weighs in favor of the Defendant Officers as they reasonably believed Plaintiff Burk to be a non-compliant and armed burglary suspect who refused to leave the private property of the potential victim who called for police presence.

With this information in mind, the third *Graham* factor also weighs in favor of the Defendant Officers. Plaintiff Burk displayed at least passive resistance when he refused to obey lawful commands from the Defendant Officers. He then exhibited behavior which can reasonably be perceived as attempting to resist detention or to flee. During the Defendant Officers' attempt to investigate the crime to which they were dispatched, Plaintiff Burk made movements towards his front pocket. Ex. 4, FIHE BWC 5:20-5:30; 6:25-6:30; FIHE DEPO. 84:25 – 85:1; 91:17 – 93:4. Plaintiff Burk did this while Defendant Fihe was giving commands to turn around and present his empty hands. ID. Such conduct can reasonably be interpreted by law enforcement officers "as an attempt to resist arrest and flee" and justified the use of "some degree or physical coercion" in detaining the suspect. *Lee v. Hefner*, 136 F. App'x 807, 812 (6th Cir. 2005); *see also United States v. Paul*, 2022 U.S. Dist. LEXIS 195652 at 15-16.

When Officer Winchell arrived on scene, he too made the decision to exit his vehicle and draw his firearm. Ex. 4, FIHE BWC 6:35-6:45. For the same reasons that it was reasonable for

Officer Fihe to use this amount of force, it was reasonable for Officer Winchell to draw and point his firearm.

> b. Officer Fihe's single use of the TASER in order to handcuff Plaintiff Burk was objectively reasonable

Shortly after Officer Winchell arrived, Plaintiff Burk got onto the ground on his own and without any additional force being used. Once on the ground, the Defendant Officers attempted to handcuff Mr. Burk. When they were unable to do so, Officer Fihe deployed his TASER one time. EX. 6, USE OF TASER REPORT. Immediately after this use of force, the Defendant Officers were able to gain control of Plaintiff Burk's arms and place him in handcuffs so that they could safely continue their investigation. EX. 4, FIHE BWC 7:45-8:00. This use of force was also objectively reasonable and Officer Fihe is entitled to qualified immunity on this issue.

The first and second *Graham* factors remain the same during this latter portion of Plaintiff's encounter with the Defendant Officers. The severity of the crime at issue and the potential threat that Plaintiff Burk posed did not change between the time that Officer Fihe arrived and the time that the TASER was used to place Plaintiff Burk in handcuffs. Indeed, Plaintiff refused to place his right arm behind his back and had access to the firearm on his right hip.

The third factor also weighs in favor of qualified immunity. Once on the ground, and before being handcuffed, Mr. Burk displayed further resistance by pulling his arms from behind his back and using his muscles to avoid being handcuffed. EX. 7, PAT VEHR REPORT, PG. 6-7. This action was actively resisting the Defendant Officers. ID. The Ohio Peace Officer Training Academy defines active resistance to be "when a subject exhibits resistive movement to avoid physical control." *See* EX. 7, PAT VEHR REPORT. Plaintiff's expert, Scott DeFoe, agrees with this definition. DEFOE DEPO. 235:18-23. The Sixth Circuit defines active resistance to specifically include "physically struggling with, threatening, or disobeying officers. And it includes refusing to move

your hands for the police to handcuff you, at least if that inaction is coupled with other acts of defiance." *Rudlaff v. Gillispie*, 791 F.3d 638, 641-42, 2015 U.S. App. LEXIS 11304, 2015 FED App. 0133p (6th Cir.); *see also Stanfield v. City of Lima*, 727, Fed. Appx. 841, 847. Not only did Plaintiff Burk disobey the Defendant Officers, he physically struggled with them and pulled his arms away from his back while the Defendant Officers were attempting to handcuff him. Ex. 4, FIHE BWC AT 6:55-8:00; EX. 7, PAT VEHR REPORT, PG. 6-7.

> c. Securing Plaintiff Burk in handcuffs and placing him in the cruiser was not
> a constitutional violation

The Defendant Officers' decision to detain Plaintiff Burk while they investigated the crime of burglary and confirmed his status as a law enforcement officer was also reasonable. A lawful detention must use a "degree of intrusion" that is "reasonably related in scope to the situation at hand." *Paul* at 13-14. Analyzing this is done by examining the reasonableness of the officers' conduct given their suspicions and surrounding circumstances. *Id.* (citing *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)); *see also United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)). Plaintiff Burk was in handcuffs for approximately fourteen minutes and was in the back of the cruiser for approximately twelve minutes. Ex. 4, FIHE BWC 8:00-21:24. While he was detained, the Defendant Officers spoke to the victim who called 911, Sarah, and took steps to confirm whether or not Plaintiff Burk was, in fact, a law enforcement officer. ID. The less than 20-minute detention of Plaintiff Burk was reasonable to investigate the suspected crimes of attempted burglary and impersonating a police officer. When a detention is temporary and lasts "no longer than is necessary to effectuate the purpose of the stop" then that detention does not violate any constitutional rights. *Id* (citing *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)).

Plaintiff Burk has failed to establish evidence that his temporary detention violated any constitutionally provided right. Plaintiff Burk has asserted, in his responses to discovery, that the actions taken by the Defendant Officers were unconstitutional because there were alternative ways to react to Plaintiff Burk's behavior[3]. This argument is unpersuasive. "'[T]he Fourth Amendment does not require officers to use the best technique available as long as their method is reasonable under the circumstances.'" *Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008)(citing *Dickerson v. McClellan*, 101 F.3d 1151, 1160 (6th Cir. 1996)). Plaintiff's preference for different behavior is insufficient to prove that the chosen behavior of the Defendant Officers was unreasonable or unconstitutional. The Defendant Officers had no way to verify Plaintiff Burk's badge number and acted reasonably according to the information they had available to them. LEIGHTON DEPO. 55:2-6. Because Plaintiff Burk cannot demonstrate that his constitutional rights were violated, the Defendant Officers are entitled to qualified immunity and Plaintiff Burk's federal 1983 claims against them must fail.

> 2. *The Defendant Officers are entitled to summary judgment on Plaintiff Burk's third claim*

Defendant Officers are entitled to summary judgment for Plaintiff's third claim. Though it is unclear from the Complaint, Plaintiff has seemingly also asserted an Ohio state-law claim against the Defendant Officers.[4] He claims "Defendants Fihe and Winchell failed to exercise due care, and acted with a malicious purpose or in bad faith, willful, wanton, or reckless manner while engaged in police functions and activities, including but not limited to the unreasonable search and

---

[3] In his responses to interrogatories, Plaintiff Burk asserts that the Defendant Officers should have called Plaintiff Burk's chain of command – without knowledge of who that may be or out of which office Plaintiff Burk worked – before exiting their vehicles at the scene. He asserts that the Defendant Officers should have assumed that Mr. Burk's statement "I'm a federal fucking agent" was a true statement and operated in accordance with that assumption.
[4] *See* COMPL. ¶¶ 75-78 (DOC.1, PAGE ID #: 14).

seizure of Agent Burk." Id. To the extent this is a claim for unreasonable search and seizure, Defendant Officers will address that below.

The Fourth and Fourteenth Amendments to the United States Constitution and Article I of the Ohio Constitution prohibit unreasonable searches and seizures.

Plaintiff's unreasonable search and seizure claim fails because the Officers acted lawfully and reasonably during the incident. Furthermore, because Officers Fihe and Winchell behaved reasonably under the circumstances, statutory immunity shields them from Plaintiff's state-law claim for the same reasons qualified immunity shields them from the 1983 claim. *See Wilkerson v. City of Akron,* 906 F.3d 477, 481 (6th Cir. 2018); *Chappell*, 585 F.3d at 916 n.3. Pursuant to O.R.C. § 2744.03(A)(6), City employees are statutorily immune from tort liability unless: (a) their acts or omissions were manifestly outside the scope of their employment or official responsibilities; (b) their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon them by some other section of the Ohio Revised Code. The statute creates a presumption of immunity, and Plaintiff must provide sufficient evidence to rebut it with one of those three statutory immunity exceptions. *See Cook v. Cincinnati*, 103 Ohio App. 3d 80, 90 (1st Dist., 1995).

Defendant Officers' actions were not manifestly outside the scope of their employment. Defendant Officers were on-duty police officers when they investigated a potential crime and ultimately used force to detain a suspect. Those are actions within the scope of an Ohio law enforcement officer's employment. *State v. Steele*, 138 Ohio St.3d 1, 10, 2013-Ohio-2470, 3 N.E.3d 135 (noting that officers have "broad authority to arrest and detain suspects"). Plaintiff's

Complaint even refers to the Defendant Officers' actions as being "engaged in police functions and activities[5]." O.R.C. § 2744.03(A)(6)(a) does not apply.

There is no provision of the Ohio Revised Code that would otherwise impose liability on the Officers for the conduct about which Plaintiff complains. O.R.C. § 2744.02(A)(6)(c) does not apply.

Before a court can determine whether an officer acted with malicious purpose, in bad faith, or in a wanton or reckless manner, it must first be shown that police acted in violation of state law. *Blair v. City of Norwalk*, 6th Dist. Huron No. H-97-005, 1998 Ohio App. LEXIS 438, *13 (Feb. 6, 1998). As explained more thoroughly above, the Officers were acting reasonably and within the bounds of the law during their interaction with Plaintiff, so the Court does not need to consider whether they acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

Even if the Court engages in that inquiry, the Officers are still entitled to immunity because their actions were objectively reasonable. See *Pollard v. City of Columbus*, 780 F.3d 395, 404, (6th Cir. 2015). One acts with malicious purpose if one willfully and intentionally acts with a purpose to cause harm. *Piro v. Franklin Twp.*, 103 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th Dist. 1995). Malice includes the willful and intentional design to do injury, or the intention or desire to harm another through conduct which is unlawful or unjustified. *Shadoan v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 31486, 2003-Ohio-5775, ¶ 12.

When officers detain a suspect with probable cause based on the statement of an eyewitness, that detention is lawful and entitles the officer to immunity under O.R.C. § 2744.03(A)(6), even if the suspect is ultimately released without charges. *Morrison v. Horseshoe Casino*, 2020-Ohio-4131, 157 N.E.3d 406, ¶¶ 3-10, 72-91 (8th Dist.). Defendant Officers

---

[5] See COMPL. ¶ 76 (DOC.1, PAGE ID #: 14).

responded to a possible burglary in progress and found an armed suspect who fit the suspect description given by the victim. When they encountered that man, he claimed he was a "federal fucking agent" and refused to comply with lawful orders. Plaintiff cannot show a willful and intentional desire to harm another through conduct which is unlawful or unjustified because the conduct was lawful and there was no desire to harm, just a desire to investigate.

Because none of these three immunity exceptions applies to Plaintiff's unreasonable search and seizure state-law claim, the Defendant Officers are statutorily immune from tort liability. For all of the foregoing reasons, Officers Fihe and Winchell are entitled to summary judgment on Plaintiff's third claim.

### 3. The Defendant Officers are entitled to Summary Judgment on Plaintiff Burk's Intentional Infliction of Emotional Distress Claim

The Defendant Officers are entitled to summary judgment on Plaintiff's state law intentional infliction of emotional distress claim. Plaintiff's fourth claim is a state law claim for intentional infliction of emotional distress (IIED). To prevail on a claim of IIED, a plaintiff must show that (1) the defendant either intended to cause emotional distress or knew or should have known the actions taken would result in serious emotional distress to the plaintiff, (2) the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) the defendant's actions proximately caused psychological injury to the plaintiff, and (4) the plaintiff suffered serious emotional distress of a nature that no reasonable man could be expected to endure it. *Georgin v. Georgin*, 2022-Ohio-4328, 204 N.E.3d 1, ¶ 37 (12th Dist.).

The Defendant Officers' actions were lawful and reasonable; therefore, they are subject to immunity and summary judgment is warranted. As discussed above, the Defendant Officers are entitled to immunity under O.R.C. § 2744.03(A)(6) for this interaction. Beyond having immunity,

the Officers are entitled to summary judgment because there is no genuine issue of material fact about Plaintiff's inability to prove this claim[6].

Parties generally cannot be held liable for intentional infliction of emotional distress for having performed an act they were legally entitled to perform. *Georgin* at ¶ 37. Whether conduct is outrageous and extreme is initially a question of law for the court. *Stakich v. Russo*, 8th Dist. Cuyahoga No. 20 CA 109392, 2021-Ohio-1098, ¶ 27. The requirement that the conduct be "extreme and outrageous" is high and "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Georgin* at ¶ 38, quoting *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 153, 462 N.E.2d 392 (1984).

Here, the Defendant Officers were responding to a 911 call of a possible burglary/impersonation of a police officer when they arrived on scene and saw a man who fit the suspect's description and did not have any law enforcement identification. The suspect had a visible firearm. The suspect said he was a "federal fucking agent." The suspect did not comply with commands to turn around. When commanded to get on the ground, the suspect said "ain't gonna happen." Once the suspect was finally on the ground, he did not put his hands behind his back, but instead struggled with the officers. After repeated commands to stop resisting, the suspect did not stop. Even after the suspect's left hand was in a cuff, his right hand – which could access the gun on his right hip – remained unsecured. Officers told the suspect he would be tased if he did not stop resisting, yet he still did not stop.

---

[6] Defendants believe Plaintiff did not suffer serious emotional distress as a result of this encounter. However, the Parties agreed to postpone discovery on the issue of damages until after dispositive motions are decided, so in the interest of fairness, Defendants will not argue about the third or fourth elements of IIED in this brief. (See Doc. 48).

It was the suspect – Plaintiff Burk – whose behavior that day was extreme and outrageous. The Officers acted on eyewitness information to engage the suspect and then used only the force necessary to secure the scene and safely confirm the suspect's claims. The Defendant Officers' conduct was not extreme or outrageous, so Plaintiff cannot prove IIED.

Plaintiff cannot show extreme and outrageous conduct by the Defendant Officers nor can he show an exception to the immunity granted by O.R.C. § 2744.03(A)(6). The Defendant Officers are entitled to summary judgment for Plaintiff's IIED claim.

### 4. The Defendant Officers are entitled to Summary Judgment on Plaintiff Hilfers' Loss of Consortium Claim

Plaintiff Summer Hilfers asserts a claim against the Defendant Officers for a loss of consortium. A claim for loss of consortium is a derivative action. *Tomlinson v. Skolnik* (1989), 44 Ohio St.3d 11, 14, 540 N.E.2d 716, 719. The consortium action would not exist but for the primary action. *Id.* Accordingly, in order to establish her claim for loss of consortium, Plaintiff Hilfers must establish that a defendant committed a legally cognizable tort upon Plaintiff Burk who suffered bodily injury. *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92, 585 N.E.2d 384 (1992); *Montgomery v. St. John's United Church of Christ*, 2023-Ohio-1168, 2023 Ohio App. LEXIS 1135, 2023 WL 2820472. The evidence in this case does not support such a result. Accordingly, for any state law claim, Plaintiff Hilfers cannot establish a claim for loss of consortium as a matter of law.

Plaintiff Hilfers also cannot state a claim for loss of consortium under § 1983 as a matter of law. *See Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000). In the Sixth Circuit, a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort. *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984); *Chambers v. Sanders*, 63 F.4th 1092, 2023 U.S. App. LEXIS 7837, 2023 FED App. 0060P (6th Cir.), 2023 WL 2753848. Accordingly,

only the purported victim, or her estate's representative, may prosecute a section 1983 claim; conversely, no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members.  *Id.*

## B.  DEFENDANT CITY OF COLUMBUS IS ENTITLED TO SUMMARY JUDGMENT

### 1.  *The City of Columbus is Entitled to Summary Judgment on Plaintiffs' Federal Monell Claims.*

While a municipality like the City can be held liable for money damages under 42 U.S.C. § 1983, such liability cannot be based merely on a theory of vicarious liability. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978). A "municipality can be found liable under § 1983 *only* where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (citing *Monell*, 436 U.S. at 694–95). Thus, a plaintiff raising a federal municipal-liability claim under § 1983 must first establish some underlying federal violation and then "demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Thornton v. Columbus*, 727 Fed. App'x 829, 838 (6th Cir. 2018); *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Rather, the "plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404 (emphasis in original); *Griffith v. Franklin County*, 975 F.3d 554, 581 (6th Cir. 2020); *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013). In other words, Plaintiffs may not merely complain about some alleged deficiency in the City's policies or customs. Rather, they "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the

deprivation of federal rights." *Bryan County*, 520 U.S. at 404; *Alman*, 703 F.3d at 903; *Triplett-Fazzone v. Columbus*, Case No.2:12-cv-331, 2013 U.S. Dist. LEXIS 110663, *16 (S.D. Ohio Aug. 6, 2013).

In light of the foregoing, it can be properly said that all municipal-liability claims under § 1983 have at least four essential elements: (1) an underlying constitutional violation by a municipal employee or agent; (2) an improper official municipal policy or custom; (3) a sufficient culpable mental state on the part of the municipality with respect to that policy or custom; and (4) a direct causal link between that municipal policy or custom and the underlying violation at issue. Because Plaintiff cannot establish any of these elements, the City is entitled to summary judgment on the remaining federal municipal-liability claims asserted against it and to a dismissal from this civil action.

With respect to the first element, a "plaintiff must show harm 'caused by a constitutional violation.' … No constitutional violation means no municipal liability." *Thomas v. Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) (quoting & citing *Lee v. Metropolitan Government*, 432 Fed. App'x 435, 449 (6th Cir. 2011)); *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Stevens-Rucker v. Columbus*, 739 Fed. App'x 834, 846 (6th Cir. 2018).

### No Constitutional Violation – Plaintiff Burk

Plaintiff Burk was not subjected to a constitutional violation by CPD officers on July 7, 2020. Plaintiff Burk makes allegations of excessive force against the Defendant Officers, but these same officers used reasonable force in order to detain Plaintiff Burk during an investigation into the commission of multiple potential crimes. Therefore, he cannot establish the first element of a *Monell* claim.

As described above, the Defendant Officers were dispatched to a burglary in progress and received a description of the alleged offender. Upon arrival to the home, the Defendant Officers found Plaintiff Burk to be armed, matching the description of the perpetrator and standing precisely where the alleged crime had taken place. There was probable cause for the Defendant officers to believe that Plaintiff Burk attempted to commit a violation of O.R.C. § 2911.12. Plaintiff Burk told Sarah he was a law enforcement officer, yet when Defendant Officers arrived on scene, he did not have a badge, credentials, or any ATF-branded clothing visible. The Defendant Officers then gave lawful commands for the attempted burglary suspect to turn around and show his empty hands. When Plaintiff Burk refused and became non-compliant, the Defendant Officers had probable cause to believe that Plaintiff Burk had committed a violation of O.R.C. § 2921.51(D).

For the following two minutes and before Officer Winchell arrived on scene, Officer Fihe attempted to gain compliance from Plaintiff Burk by giving verbal commands and maintaining his firearm pointed at Plaintiff Burk. As described above, this decision to hold the burglary suspect at gunpoint was a reasonable one and does not amount to a violation of Constitutional rights. Despite Officer Fihe's attempt to gain control of Plaintiff Burk with verbal commands, Plaintiff Burk continued to not comply. In response, Officer Fihe continued to point his firearm.

Once on the ground, the Defendant Officers gave additional verbal commands for Plaintiff Burk to place his hands behind his back in order to be handcuffed. However, as soon as the Defendant Officers began to control the arms of Plaintiff Burk, Plaintiff Burk began to actively resist. Ex. 4, Fihe BWC 6:25-8:00; Ex. 7, Pat Vehr Report. Officer Winchell responded to this resistance by physically manipulating Mr. Burk's right arm and shoulder in order to place his right arm behind his back in a place where handcuffs could be applied. Id. Officer Fihe attempted the same on Plaintiff Burk's left arm. Id. It is visible in the body-worn camera footage that Plaintiff

Burk pulls his left arm away from his back and up towards his face. ID. This was reasonably interpreted by the Defendant Officers to be an act of active resistance. When Officer Fihe observed this active resistance, he made the decision to move to a Level 3 use of force and used his TASER for one cycle. ID; EX. 6, USE OF TASER REPORT. This action was effective in getting Plaintiff Burk to comply as he immediately moved his hands to a position behind his back and was successfully handcuffed. The Defendant Officers attempted to place handcuffs on Mr. Burk and end the confrontation quickly using a low-level of force. However, Mr. Burk actively resisted that attempt by engaging his muscles in a manner that prevented his hands from being placed behind his back.

Plaintiff Burk cannot establish any underlying violation of his constitutional rights by the Defendant Officers. Because Plaintiff cannot establish any underlying constitutional violation, the Court may grant the City's motion for summary judgment for that reason alone.

### No Improper Policy

With respect to the second element of a federal municipal-liability claim, the Sixth Circuit has long recognized at least four avenues for establishing an improper municipal policy: "The plaintiffs can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986). Plaintiff cannot establish the existence of an improper municipal policy through any of these four potential avenues. As such, the City is entitled to summary judgment on the remaining federal municipal-liability claims for that reason as well.

While the remaining discussion about Plaintiff Burk's *Monell* theories will be organized around these four avenues, it must be remembered that these avenues are merely methods for

establishing the second element of such claims. Even if Plaintiff can establish an underlying constitutional violation (which he cannot) and an improper policy (which he cannot), he must still prove both the third and fourth essential elements of federal municipal liability (i.e., causation and culpability)(which he also cannot). *See Bryan County*, 520 U.S. at 405. In the context of municipal liability, causation exists only when the purportedly improper policy is the "moving force of the constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)); *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 388–89. Moreover, the relevant culpable state for municipal liability is that of "deliberate indifference"— a "very high standard of culpability, exceeding 'gross negligence.'" *Ross v. Duggan*, 402 F.3d 575, 590 n.7 (6th Cir. 2004) (emphasis in original) (quoting *Canton*, 489 U.S. 378, 388–92 & n.7).

When a plaintiff claims that a particular municipal action itself violated federal law or that the municipality has specifically directed its employees to do something that violates federal law (i.e., the first and second avenues for establishing an improper municipal policy), resolving municipal-liability issues of culpability and causation is a relatively straightforward matter. *Bryan County*, 520 U.S. at 404. After all, "Section 1983 itself 'contains no state-of-mind requirement independent of that necessary to state a violation' of the underlying federal right." *Id.* at 405 (quoting *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986)). Thus, "proof that a municipality's legislative body or authorized decision maker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably." *Bryan County*, 520 U.S. at 405. Nonetheless, when a plaintiff claims that the municipality has not directly inflicted an injury, but has instead caused and allowed the injury to happen (i.e., the third and fourth avenues to an improper municipal policy), "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* (citing

*Canton*, 489 U.S. at 391–92; *Tuttle*, 471 U.S. at 824; *Springfield v. Kibbe*, 480 U.S. 257, 270–71 (1987) (O'Connor, J., dissenting)); *Connick v. Thompson*, 563 U.S. 51, 74 (2011).

<u>No Improper Legislative Enactment or Official Policy</u>

In order to establish the existence of an improper municipal policy, Plaintiff can first look to the municipality's legislative enactments or to the official agency policies. *See Thomas*, 398 F.3d at 429; *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. When trying to prove the existence of an illegal municipal policy through a legislative enactment or official agency policy, a § 1983 plaintiff must look to the municipality's written laws, rules, regulations, or directives. Plaintiff cannot identify any legislative enactment or official agency policy that directs or allows Columbus police officers to engage in any of the purportedly unconstitutional conduct that he assigns to the Defendant Officers on July 7, 2020. In any event, "[f]or § 1983 purposes, not every directive issued by a county official constitutes a 'policy.' … Instead, a policy must either be facially unconstitutional or reveal that policymakers were deliberately indifferent to the rights of those affected by the directive." *Payne v. Sevier County*, 681 Fed. App'x 443, 447 (6th Cir. 2017) (citing *Bryan County*, 520 U.S. at 404, 406–07).

Columbus Police Directive 2.01(II)(A)(2) states that "[p]olice officers shall not use more force than is reasonable in a particular incident," and Directive 2.01(II)(A)(3) provides a list of factors "to be considered when determining the reasonableness of a use of force." Ex. 8, CPD DIVISION DIRECTIVE 2.01. Those factors include: (a) the "severity of the crime at issue"; (b) whether the "suspect poses an immediate threat to the safety of the officer or others"; (c) whether the "suspect is actively resisting arrest"; and (d) whether the "suspect is attempting to evade arrest by flight." Thus, the City's use-of-force directive essentially repeats the longstanding holding of *Graham v. Connor*, 490 U.S. 386 (1989), in which the Supreme Court first explicitly applied the

Fourth Amendment' objective reasonableness test to the force used in the law enforcement contexts. *Graham* at 395–96. Nothing within the City's official agency policies authorizes, orders, or permits a CPD officer to use more force than is reasonable in a particular incident.

Ultimately, Plaintiff cannot identify any written City policy that was unconstitutional on its face or that actually caused the constitutional deprivations that he alleges. In fact, when asked to do so during discovery, Plaintiff refused[7]. EX. 9, J. BURK RESP. TO CITY INTERROG. # 23. In his Complaint, Plaintiff refers only to "de facto" policies, practices and customs which allegedly caused Plaintiff's harm. COMPL. (DOC. 1 PAGEID #1-16). This is- not sufficient. Plaintiff's expert, Scott DeFoe, found no issues with any CPD policy. DEFOE DEPO. 248:8-20; 263:5-16 ("I'm not, as I mentioned earlier, critical of the policies at all regarding any of these matters."). Without the ability to point to any CPD policy which might support his *Monell* claim, Plaintiff Burk cannot establish the existence of an improper municipal policy through any of the City's legislative enactments or official agency policies. If his *Monell* claims against the City are to succeed at all, Plaintiff Burk must avail himself of another avenue of municipal liability.

<u>No Final Decision-Maker Approval</u>

In order to establish the existence of an improper municipal policy, Plaintiff Burk can next look to actions taken by municipal officials with final decision-making authority. *See Thomas*, 398 F.3d at 429; *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. Under this ratification theory of municipal liability, "a single decision can constitute a municipal policy or custom, if that decision is made by an official who possesses final authority to establish municipal policy with respect to

---

[7] When asked to identify the city's purportedly unconstitutional polic[ies], Plaintiff stated "Objection. See Complaint ¶¶ 60-74 for Plaintiffs' theory of recovery. CPD policies, customs, and practices are in Defendants' possession. Plaintiffs will identify such policies and any additional documents responsive to this Request as discovery continues." Plaintiff's Complaint does not identify any specific CPD policy whatsoever. The entirety of CPD's policies are publicly available on their website and Plaintiff has not provided any supplement to discovery which would shed light as to which policy his Complaint references.

the action ordered, which means that his decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Stillwagon v. Delaware*, Case No. 2:14-cv-80, 2016 U.S. Dist. LEXIS 44223, *61–62 (S.D. Ohio March 31, 2016) (internal quotations omitted); *Pembaur*, 475 U.S. at 480–81; *Flagg v. Detroit*, 715 F.3d 165, 175 (6th Cir. 2013). Thus, an "official with final decision making authority ratifies a subordinate's action if the decision maker provides 'affirmative approval of a particular decision made by the subordinate.'" *Stillwagon*, 2016 U.S. Dist. LEXIS 44223, *62 (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993)). Plaintiff's expert, Scott DeFoe, found no evidence of ratification in his review of the case. DEFOE DEPO. 266:23-24; 267:1-5 ("But, no, I'm not critical of what the department do [sic] proceeding the incident, that the - - they somehow, you know, you know, there was a failure to train by the department preceding or there was a ratification issue because there were prior disciplinary issues and they failed to take issues. I'm not purporting that.").

Plaintiff Burk cannot identify any "official with final decision making authority" who gave prior approval for any alleged constitutional violation. As such, Plaintiff Burk cannot sustain a municipal-liability claim against the City upon a ratification or final decision-maker theory.

<u>No Inadequate Training or Supervision</u>

In order to establish the existence of an improper municipal policy, Plaintiff Burk can next look to a policy of inadequate training or supervision. *See Thomas*, 398 F.3d at 429; *Griffith*, 975 F.3d at 581; *Burgess*, 735 F.3d at 478. While inadequate police training and supervision can serve as an improper policy or custom for purposes of municipal liability, they do so only when the purported failures to train or supervise amount to "deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388–89.

To succeed on a failure-to-train or a failure-to-supervise theory of municipal liability, Plaintiff must prove that: (a) the City's training or supervision program was inadequate to the tasks

its officers must perform; (b) such an inadequacy was the result of the City's deliberate indifference; and (c) these particular inadequacies were closely related to or did actually cause Plaintiff's injury. *Canton*, 489 U.S. at 389–91; *Roell*, 870 F.3d at 487; *Alman*, 703 F.3d at 903; *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989).

Plaintiff cannot show that the training or supervision received by Columbus police officers was—or is—lacking or inadequate to the tasks those officers must perform. The City trains its law enforcement officers thoroughly. Columbus Police Officers are trained extensively on use of force. This training begins in the Columbus Police Academy with a minimum of 80 hours devoted to defensive tactics, exceeding the requirement of 70 hours mandated by the Ohio Police Officers Training Commission (OPOTC). EX. 7, PAT VEHR REPORT. Additionally, officers receive annual 8-hour in-service training on defensive tactics. The annual in-service training far exceeds the standard set forth by the Commission for Accreditation for Law Enforcement Agencies, Inc. (CALEA). ID. Officers are taught techniques to control a resistive subject. These techniques include striking methods, joint manipulations, grounding techniques, the use of TASER, and de-escalation. Furthermore, officers are trained on departmental use of force policy and any legal updates relating to police use of force. ID. In short, the Defendants' training complies with current law enforcement best practices.

In addition to training specifically on defensive tactics, every CPD officer receives a wealth of training scenarios. The training scenarios begin during recruit training and continue throughout an officer's career during annual in-service training. ID. Each scenario has a specific objective. The objectives vary from basic patrol-level tasks to complex and specific issues that arise throughout the year. The development of each scenario is rooted in the departmental policy that applies to the scenario. ID. In this case, Division Directive 4.03 is the foundation for scenarios

involving out-of-uniform personnel. D.D. 4.03 deals specifically with both personnel operating in a covert capacity and uniformed personnel interacting with out-of-uniform law enforcement officers. ID. For example, D.D. 4.03, Section II – Procedures, sub-section "A. Personnel Challenging Possible Out-of-Uniform Law Enforcement Personnel" states the challenging officer will "(1) Approach cautiously and identify yourself as a police officer; (2) Give clear, concise, and non-conflicting order; (3) Instruct individuals claiming to be law enforcement personnel, whose identity you are not able to immediately confirm, to disarm in a safe manner and then produce their agency's identification. If the individual refuses to comply, treat the situation as any other encounter with an armed individual." ID.

Furthermore, Division Directive 4.03.II.B also details the actions of an out-of-uniform officer when being challenged by a uniformed officer. Namely, the out-of-uniform officer will, "Remain motionless and react professionally. Respond to the commands of the challenging personnel even if it means allowing a suspect to escape." This is consistent with the training that Plaintiff Burk received as an ATF agent. EX. 5, KEITH LEIGHTON REPORT, PG. 2-3; ATF DEPO. BY WRITTEN QUESTION, #45, 42.

Plaintiff's expert acknowledges that CPD's training meets the standards required by CALEA but holds the opinion that the City's training was still deficient because there was no follow-up training specifically following this interaction with Plaintiff Burk. DEFOE DEPO. 268:14-23. This is not the standard. CPD's training, both in the academy and after, exceeds the requirements of both state and federal police best practices. Mr. DeFoe explained in deposition that his opinions regarding training do not include the training received by the Defendant Officers *before* this event but only the training that they received as a result of this event. DEFOE DEPO. 265:16 – 268:23.

Plaintiff cannot identify any particular deficiencies or inadequacies in the CPD's use-of-force training or supervision. Although he makes general allegations of purportedly improper training, Plaintiff Burk does so in only the vaguest of terms and provides no additional evidence or explanation. COMPL. ¶¶ 64(a), 64(f), 64(g), 70, 72. Of course, the "party opposing a motion for summary judgment 'may not rest upon the mere allegations or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Mayers v. Williams*, Case No. 16-5409, 2017 U.S. App. LEXIS 22053, *3 (6th Cir. April 21, 2017) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Moreover, Plaintiff cannot establish that any purported deficiency in the City's training or supervision was the result of any deliberate indifference. "To establish deliberate indifference, a plaintiff generally needs to show that the policy has resulted in 'prior unconstitutional actions,' but that policymakers have maintained the policy nonetheless." *Payne v. Sevier County*, 681 Fed. App'x 443, 447 (6th Cir. 2017) (quoting *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005)); *Connick*, 563 U.S. at 62. Plaintiff Burk cannot produce evidence of even a single prior unconstitutional use of force by either Defendant Officer.

Plaintiff Burk also cannot prove that any deficiency in training would have been the "moving force" behind his alleged harm. Without the ability to do so, Plaintiff Burk's *Monell* claim cannot succeed under a theory of inadequate training. *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)); *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 388–89. Mr. Defoe explained at deposition that he could not find any deficiency in the training that the Defendant Officers received prior to their interaction with Plaintiff Burk. DEFOE DEPO. 265:16 – 268:23. Instead, he finds a failure in the department's decision to not give the Defendant Officers additional training after this incident. ID. Defendants

disagree that there was a deficiency in training following this event but even if there were, such a deficiency cannot support a claim for *Monell* liability. *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985) (quoting *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)); *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 388–89. A lack of training in response to an interaction cannot be the moving force which caused that same interaction. This defies the linear nature of time which continuously moves forward.

Ultimately, Plaintiff cannot provide evidence of a "pattern of similar constitutional violations" that would be "'ordinarily necessary' to demonstrate deliberate indifference" on the City's part. *Connick*, 563 U.S. at 62 (quoting *Bryan County*, 520 U.S., at 409); *Brown*, 844 F.3d at 573. Still, the Supreme Court has left open the possibility that a pattern of similar prior constitutional violations might not be necessary to establish deliberate indifference, but only "in a narrow range of circumstances." *Connick*, 563 U.S. at 63 (quoting *Bryan County*, 520 U.S. at 409; citing *Canton*, 489 U.S. at 390 n.10); *Brown*, 844 F.3d at 573. For "liability to attach in the instance of a single violation, the record must show 'a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Harvey v. Campbell County*, 453 Fed. App'x 557, 567 (6th Cir. 2011) (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)). Plaintiff cannot meet this exacting standard because, as stated above, the City extensively trains on all topics relevant to this case.

The City of Columbus trains its uniformed police officers above and beyond the state-minimum standards, so Plaintiff cannot sustain a failure-to-train or supervise theory of municipal liability against the City in this case.

<u>No Custom of Tolerance or Acquiescence</u>

The Sixth Circuit has identified four factors that a plaintiff must prove in order to establish

a custom of tolerance or acquiescence:

> (1) the existence of a clear and persistent pattern of illegal
> activity; (2) notice or constructive notice on the part of the
> defendant; (3) the defendant's tacit approval of the
> unconstitutional conduct, such that their deliberate indifference
> in their failure to act can be said to amount to an official policy
> of inaction; and (4) that the defendant's custom was the moving
> force or direct causal link in the constitutional deprivation.

*Stanfield v. Lima*, 727 Fed. App'x 841, 851 (6th Cir.2018) (quoting *Thomas*, 398 F.3d at 429);

*Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996); A plaintiff "cannot establish a custom

solely by pointing to the facts of his own case." *Payne v. Sevier Cty*, 681 F.App'x 443, 446 (6th

Cir. 2017). Instead, he or she must "'reach beyond' the alleged misconduct at issue, and show

'several separate instances' of similar misconduct." *Id*. Plaintiff Burk also cannot use

contemporaneous or subsequent conduct to establish the existence of a clear and persistent pattern

of illegal activity. *Abdur-Rahim*, 425 F. Supp. 3d 935, 958 (S.D. Ohio December 2, 2019)(reversed

in part on other grounds), citing *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011). This is because,

"[c]ontemporaneous or subsequent violations do not provide a municipality with notice and an

opportunity to conform to constitutional dictates, which if not performed, constitute deliberate

indifference." *Id*. Here, Plaintiff has not provided any evidence of a clear and persistent pattern of

CPD using excessive or retaliatory force for detaining, for purposes of investigation, suspects of

burglary or impersonating a police officer. Plaintiff Burk has not and cannot establish a custom of

tolerance or acquiescence.

Because Plaintiff Burk cannot show an underlying constitutional violation nor an improper

official municipal policy or custom, summary judgment is appropriate on the federal claims against

the City of Columbus specifically.

## V.        CONCLUSION

For the reasons stated above, Defendants Officers Fihe and Winchell and the City of Columbus respectfully move this Court for summary judgment on all claims asserted against them in this action and for a final judgment entry in their favor.

Respectfully submitted,

/s/ Samantha M. Hobbs
Samantha M. Hobbs (0098726)
Alexandra N. Pickerill (0096758)
Assistant City Attorneys
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 N. Front Street, 4th Floor
Columbus, Ohio 43215
(614) 645-7385 / (614) 645-6949 (fax)
smhobbs@columbus.gov
anpickerill@columbus.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on **August 14, 2023**, I electronically filed the foregoing with the Clerk of this Court by using the Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained, through the Court's CM/ECF System.

/s/ Samantha M. Hobbs
Samantha M. Hobbs (0098726)