**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| James A. Burk, Jr., et al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 2:20-cv-6256 |
| | : | |
| v. | : | Judge Graham |
| | : | |
| City of Columbus, et al., | : | Magistrate Judge Vascura |
| | : | |
| Defendants. | : | |

**RESPONSES OF PLAINTIFF, JAMES A. BURK, JR., TO DEFENDANT,**
**CITY OF COLUMBUS'S FIRST SET OF INTERROGATORIES AND**
**REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 33, and 34 of the Ohio Rules of Civil Procedure, Plaintiff, James A. Burk, Jr., hereby submits his responses and objections to Defendant, City of Columbus's, First Set of Interrogatories and Request for Production of Documents (the "Discovery Requests").

**GENERAL RESPONSES AND OBJECTIONS**

1.      Plaintiff objects to the Discovery Requests to the extent that they seek the disclosure of information which is protected by the attorney-client privilege, the work product doctrine, or which is otherwise privileged or protected from disclosure.

2.      Plaintiff states that he is responding to the Discovery Requests to the best of his present knowledge, information and belief, and expressly reserves the right to supplement these responses herein, if necessary.

3.      In providing responses to the Discovery Requests, Plaintiff does not waive and expressly reserves all objections as to competency, relevancy, materiality, and admissibility of the answers as well as all objections to any other discovery request.

Subject to the foregoing objections, and to the particularized objections set forth below, Plaintiff responds as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

## INTERROGATORIES

**INTERROGATORY No. 1:**

State the name, address, phone number, and e-mail address of each individual whom you believe has discoverable information about the Incident, your Losses, or your Noneconomic Losses, and state the general subject matter of the information you believe that individual has.

**ANSWER:**    See Plaintiffs' initial disclosures, which Plaintiffs served on April 2, 2021.

Plaintiffs incorporate those disclosures herein.  Plaintiffs also incorporate Defendants'

disclosures and their responses to Interrogatories numbers one and nine.  In addition to the

individuals Plaintiffs have already disclosed, Plaintiffs list the following individuals:

- Agent Alicia D. Jones
  ATF-Assistant Special Agent in Charge
  Columbus Field Division

- Agent Frank Occhipinti
  ATF - Resident Agent in Charge
  Cincinnati Field Office
  Columbus Field Division

- Agent Roland Herndon
  ATF – Special Agent in Charge
  Columbus Field Division

- Jonathan McPherson
  ATF – Special Agent in Charge
  Columbus Field Division

- Donald Bryant, PA-C
  TriHealth
  Arrow Springs
  100 Arrow Springs Blvd.
  Lebanon, Ohio 45063

- Trevor Stefanski, MD
  MercyHealth
  Cincinnati Sports Medicine & Orthopedic Center

- Jacob Gunzenhaeuser, MD
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Red Bank

- David Donnelly, PA
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Anderson

- Paul Favorito, MD
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Anderson

- Rachel Heberling, MD
  Physical Medicine & Rehabilitation
  Green Township Office
  5885 Harrison Avenue, Suite 2300
  Cincinnati, Ohio

- Jeremy Bruce, MD, FACP
  The Christ Hospital Physicians
  Anderson Internal Medicine
  7545 Beechmont Avenue, Suite K
  Cincinnati, Ohio 45245

- Bryan G. Beutel, MD.
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Montgomery

- Joseph Bienvenu, MD, PHD
  The Johns Hopkins Hospital
  600 N. Wolfe Street
  Meyer Building Suite 115
  Baltimore, Maryland 21287

- Records custodians for the above treating physicians.

**INTERROGATORY No. 2:**

State the name, address, phone number, and e-mail address for each individual whom you intend to call as a lay and/or an expert witness at any hearing or trial in this action and state the subject matter upon which you expect each such individual to testify.

**ANSWER:**  Objection. Plaintiffs have not yet decided the lay witnesses they intend to call at

trial.  Plaintiffs will provide such information in accordance with any pertinent scheduling order.

Lastly, Plaintiffs will provide expert disclosures in accordance with the case schedule.

Without waiving the foregoing objections, see Plaintiffs' initial disclosures, which

Plaintiffs served on April 2, 2021.  Plaintiffs incorporate those disclosures herein.  Plaintiffs also

incorporate Defendants' disclosures and their responses to Interrogatories numbers one and nine.

In addition to the witnesses Plaintiffs already disclosed, Plaintiffs identify the following fact

witnesses:

- Agent Alicia D. Jones
  ATF-Assistant Special Agent in Charge
  Columbus Field Division

- Agent Frank Occhipinti
  ATF - Resident Agent in Charge
  Cincinnati Field Office
  Columbus Field Division

- Agent Roland Herndon
  ATF – Special Agent in Charge
  Columbus Field Division

- Jonathan McPherson
  ATF – Special Agent in Charge
  Columbus Field Division

- Donald Bryant, PA-C
  TriHealth
  Arrow Springs
  100 Arrow Springs Blvd.
  Lebanon, Ohio 45063

- Trevor Stefanski, MD
  MercyHealth
  Cincinnati Sports Medicine & Orthopedic Center

- Jacob Gunzenhaeuser, MD
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Red Bank

- David Donnelly, PA
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Anderson

- Paul Favorito, MD
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Anderson

- Rachel Heberling, MD
  Physical Medicine & Rehabilitation
  Green Township Office
  5885 Harrison Ave., Ste 2300
  Cincinnati, Ohio

- Jeremy Bruce, MD, FACP
  The Christ Hospital Physicians
  Anderson Internal Medicine
  7545 Beechmont Ave., Suite K
  Cincinnati, OH 45245

- Bryan G. Beutel, MD.
  The Christ Hospital Physicians
  Orthopedics & Sports Medicine, Montgomery

- Joseph Bienvenu, MD, PhD
  The Johns Hopkins Hospital
  600 North Wolfe Street
  Meyer Building Suite 115
  Baltimore, Maryland 21287

- Records custodians for the above treating physicians.

**INTERROGATORY No. 3:**

Describe any ATF protocol, standards, or guidelines for agents' interactions with law enforcement, including but not limited to members of the Columbus Division of Police.

**ANSWER:**     To Plaintiffs' knowledge, there are no formal protocols, standards, or guidelines

for interactions with law enforcement. That said, the usual practice is when an officer arrives to

scene of a retrieval, the ATF Agent—unless working undercover—will identify himself and

offer his credentials, as Plaintiff did here. Often, but not always, the ATF Agent will need

cooperation and assistance from local police who usually willingly offer that assistance.

**INTERROGATORY No. 4:**

Identify, for the preceding 10 years, all complaints, investigations, and conclusions (whether orally or in writing) about Agent Burk in any manner (including, but not limited to any, allegations of dishonest conduct and/or theft).

**ANSWER:**     Objection. Plaintiffs object to this request to the extent it requests information not

reasonably calculated to lead to the discovery of admissible evidence. Stating further, Plaintiffs

object to the extent that this Interrogatory seeks documents protected by attorney-client privilege,

work product, mediation, or investigatory privilege. The ATF and DOJ strictly prohibits

Plaintiff from disseminating their documents without direct approval.

**INTERROGATORY No. 5:**

Identify all training materials used to train Agent Burk regarding the interaction with members of law enforcement.

**ANSWER:**     See answer to Interrogatory No. 3.

**INTERROGATORY No. 6:**

Identify (by providing the name, address, phone number, and e-mail address) Agent Burk's direct supervisors at the ATF for each of the preceding 10 years.

**ANSWER:**

- Frank Occhipinti
  550 Main Street, Rm 8-491
  Cincinnati OH 45202
  (513) 684-3354, (520) 664-4167

- Clayton Merrill
  425 West Capitol, Room 775
  Little Rock Arkansas 72201
  (501) 324-6181

- James Deir
  2650 International Drive
  Oakland, Michigan 48363
  (513) 824-1877

**INTERROGATORY No. 7:**

Identify or describe all Documents, electronically stored information, and tangible things that you have in your possession or control and that you intend to use, introduce, or admit as an exhibit at, in, or during any hearing or trial in this action.

**ANSWER:** Objection. Plaintiffs have not yet decided what exhibits they intend to use at

trial. Plaintiffs will disclose their eventual exhibits in accordance with any case schedule.

Without waiving the foregoing objections, see accompanying production for the relevant

documents currently in Plaintiffs' possession. Plaintiffs will supplement as discovery continues.

**INTERROGATORY No. 8:**

Identify each medical (including physical and psychological) impairment you allege you have sustained as a result of the Incident, and identify each medication you have been proscribed to treat injuries (physical or psychological) you sustained as a result of the Incident.

**ANSWER:**    Agent Burk's injuries and treatment from the Incident is ongoing. Thus, Agent Burk reserves the right to supplement this response as treatment continues. See attached medical records. To summarize, Agent Burk suffered:

- Diagnosed labral tear and bicep tendon tear of right shoulder - Underwent general anesthesia surgery to address injury. Ten weeks of prescribed Physical Therapy (PT). Continued limited range of motion of right shoulder with associated articulation pain. Continued regular use of use of over-the-counter pain medication (Tylenol, Motrin, Naproxen) to treat continued pain and discomfort.

- Diagnosed neuropathy ulnar nerve of left wrist/ hand (Wartenberg Syndrome) - Continued use of prescribed supportive splint to address numbness and over-the-counter pain killers and anti-inflammatory (Motrin, Naproxen) to treat numbness and discomfort.

- Diagnosed Post-Traumatic Stress Disorder (PTSD) and Major Depressive Disorder (MDD). Prescribed: Sertraline 100mg, Mirtazapine 15mg, Losartan-HCTZ 100-25mg

**INTERROGATORY No. 9:**

State the total amount of wages you've lost so far as a result of the Incident, and the total amount of wages you expect to lose in the future as a result of the Incident.

**ANSWER:**    At this point, Agent Burk cannot determine his lost wages. However, Agent Burk's injuries stemming from the incident have rendered him unable to act as a law enforcement officer moving forward. As far as post ATF income earning opportunities, Agent Burk is now limited in what he can do physically. He cannot perform farming, building trades, and other prior planned/anticipated post ATF income earning business pursuits due to his resulting physical limitations from the incident at issue. Agent Burk seeks his future diminished earning capacity, which Plaintiffs will prove through expert testimony.

**INTERROGATORY No. 10:**

Describe how your future earning capacity has been impaired as a result of the Incident.

**ANSWER:** See Interrogatory No. 9.

**INTERROGATORY No. 11:**

State the total amount of money you have spent out-of-pocket for medical care or treatment, rehabilitation services, or for other care, treatment, services, products, or accommodations that were necessary because of the injuries you allege were caused by the Incident. For the purposes of this interrogatory, "out-of-pocket" means money that you paid that was not reimbursed by an insurance company or any other source.

**ANSWER:** See medical records produced in connection with these Responses. Also, as

Plaintiff continues treatment this number continues rising. Once Plaintiffs knows the exact

number, they will supplement this response.

**INTERROGATORY No. 12:**

Identify each insurance company that provided benefits or payment for any cost you incurred for medical care or treatment, rehabilitation services, or for other care, treatment, services, products, or accommodations, including pharmaceutical expenses, that were necessary because of the injuries you allege were caused by the Incident.

**ANSWER:** Plaintiff's health insurance policy is with SAMBA.

**INTERROGATORY No. 13:**

State the total amount of costs you have incurred for medical care or treatment, rehabilitation services, or for other care, treatment, products, or accommodations, including pharmaceutical expenses, as a result of the Incident. For the purposes of this interrogatory, "total amount of costs" means the total dollar amount that has been billed or paid by you, someone on your behalf, or an insurance company.

**ANSWER:**    See medical records produced in connection with these Responses.  Also, as

Plaintiff continues treatment this number continues rising.  Once Plaintiffs knows the exact

number, they will supplement this response.  To date, Plaintiff has incurred at least $50,995.84 in

medical bills.

**INTERROGATORY No. 14:**

State the total amount of costs you expect to incur in the future for medical care or
treatment, rehabilitation services, or for other care, treatment, products, or accommodations,
including pharmaceutical expenses, that will be necessary because of the injuries you allege were
caused by the Incident. For the purposes of this interrogatory, "total amount of costs" means the
total dollar amount that will be billed or paid by you, someone on your behalf, or an insurance
company.

**ANSWER:**    Unknown currently.  See medical records produced in connection with these

Responses.  Also, as Plaintiff continues treatment this number continues evolving.  Plaintiffs will

supplement this response in accordance with the case schedule through expert testimony.

**INTERROGATORY No. 15:**

Identify every place where Plaintiff has worked in the field of law enforcement.  Include
Plaintiff's job title at each employer, and reason Plaintiff left said employment.

**ANSWER:**    See Plaintiff's CV produced in connection with these Responses.

**INTERROGATORY No. 16:**

Identify all City/CPD customs, polices, and practices that were the moving forces behind
any of the constitutional violations you've claimed in your complaint.

**ANSWER:**    See Complaint ¶¶ 60-74.  Plaintiffs will identify additional customs, policies, and

practices learned during discovery and supplement this response.

**INTERROGATORY No. 17:**

Identify all City/CPD customs, polices, and practices that allow, permit, facilitate, encourage, or direct City employees and/or CPD police officers to use excessive force.

**ANSWER:**   See Complaint ¶¶ 60-74.  Plaintiffs will identify additional customs, policies, and

practices learned during discovery and supplement this response.


**INTERROGATORY No. 18:**

If you believe any of the constitutional violations you've claimed in your complaint were the result of deficient training, supervision, or discipline, identify all of the training, supervision, or discipline you believe to have been deficient.

**ANSWER:**   See Complaint ¶¶ 60-74.  Plaintiffs will identify additional customs, policies, and

practices learned during discovery and supplement this response.


**INTERROGATORY No. 19:**

If you believe any of the constitutional violations you've claimed in your complaint were the result of deficient training, supervision, or discipline, identify and describe the training, supervision, or discipline that you believe the City/CPD should have provided.

**ANSWER:**   See Complaint ¶¶ 60-74.  In addition, Plaintiffs' expert will identify the proper

training the City/CPD should have provided in accordance with the case schedule.


**INTERROGATORY No. 20:**

Identify any acts you believe the City/CPD should have taken in their investigation of the Incident but did not.

**ANSWER:**   Objection.  Plaintiffs' expert will identify the proper investigative steps the

City/CPD should have taken in accordance with the case schedule.  Stating further, Plaintiffs

object to the extent this Interrogatory is vague as the term "investigation" is undefined.  For

instance, does investigation refer to responding to the scene itself or reviewing the Incident in its

aftermath?  Plaintiffs ask Defendants to clarify what they mean by investigation so Plaintiffs can supplement this response.

To the extent this Interrogatory refers to responding to the scene, Plaintiffs answer as follows.

CPD dispatch personnel should have immediately attempted to verify Agent Burk's identity following the dispatch of responding officers.  All required protocol identifiers (name, title, agency, and badge number) were provided to the CPD Dispatch by the caller.  A phone call to the local ATF office would have confirmed identity, physical description, and nature of field assignment. This information was readily accessible as CPD has a longstanding working partnership with ATF via CPD officers assigned to the ATF Columbus Field Office as Task Force Officers.  The TFO'S are readily familiar with Agent Burk and have received biannual firearms and tactical training from Agent Burk as the former ATF Columbus Field Division Tactical Advisor (DTA) and Firearms Instructor Coordinator (FIC) from 2014 –2016.  Agent Burk was assigned to the ATF Columbus Field Division for 17 ½ years and was well known throughout the Division.  CPD Dispatch should have orally provided the given identifiers to the responding/dispatched officers to de-escalate the response and or provide the responding officers with accurate information to immediately corroborate upon arrival at the scene/upon initial contact with Agent Burk, thus preventing any unnecessary use of force or potential injuries.

Before arrival to the scene, Officers Fihe and Winchell should have consulted the CAD and seen that Agent Burk had given his name, division, and badge number, which the 911 caller had read to the dispatcher over the phone.

Upon arrival on scene, CPD Officer Fihe should have de-escalated his response upon seeing Agent Burk from the distance with his hands raised and a warrant in hand. Officer Fihe should have recognized that Agent Burk posed no threat and should not have immediately drawn his weapon. Further, Office Fihe should have recognized Agent Burk's attempt to engage in a typical inter LE dialogue and should have thus identified with Agent Burk's shock and fear of having a loaded firearm pointed at him by a fellow LE officer, while in the performance of his legal duties within in his federal jurisdiction, and Division area of responsibility (AOR).

Observing Agent Burk's professionally common LE field attire (tan 511 cargo pants, plain color polo type shirt, and tactical type footwear), non-threatening posture, visible hands raised in the air (left hand holding manila file folder, right hand empty), verbally attempting to identify himself, and presenting no threat whatsoever, Officer Fihe should have immediately de-escalated his overtly aggressive demeanor. He should have lowered his firearm pointed at Agent Burk and engaged in a standard investigative dialogue to better ascertain Agent Burk's identity (allowing Agent Burk to calmy present his credentials and provide any pertinent details to resolve Officer Fihe's fears/concerns and that of the caller) and investigative purpose at the location. Officer Fihe should have then assisted agent Burk with finishing the NICS retrieval.

Even if Officer Fihe had a legitimate fear for anyone's safety—which we contest—he still should have utilized standard LE tactics of keeping his pistol depressed, maintained a suitable position of cover, and awaited the arrival of a more experienced officer or a supervisor. Agent Burk was not fleeing nor actively committing any crime while engaging with Officer Fihe and Officer Fihe could not have reasonably believed otherwise.

Upon arrival, Officer Winchell, also should have de-escalated his response. Officer Winchell also had no reason to immediately draw his firearm. Officer Winchell should have

- 13 -

attempted to listen to the information Agent Burk provided identifying himself. Officer Winchell should have intervened to retrieve Agent Burk's credentials and confirm Agent Burk's identity. Officer Winchell should not have allowed the actions of Officer Fihe to cause himself to engage in a "pack mentality" approach to resolving a standard non-threatening LE interaction, when it should have been very apparent that the force used was completely unnecessary to resolve the situation.

Upon Agent Burk placing himself face down on the ground and keeping his hands visible, Officers Fihe and Winchell should have utilized standard LE control/cover tactics to retrieve Agent Burk's credentials from his left cargo pocket and thus confirm Agent Burk's identity and immediately refrain from their use of overt aggression and the unnecessary tasing of Agent Burk multiple times while Agent Burk was in a prone position with his empty hands in full view. Both Officers had their duty firearms drawn and pointed at close range while engaging Agent Burk. Both Fihe and Winchell should have engaged in a dialogue to take Agent Burk's advisement of a medical condition as a cause for concern based on the lack of threat Agent Burk presented.

After tasing and handcuffing Agent Burk, Officer Fihe should have immediately de-escalated his aggression toward Agent Burk and attempted to begin a dialogue in a calm and controlled manner to prevent further trauma and/or injury to Agent Burk.

The Officers should have recognized Agent Burk's physical distress and verbalization of his identity as an ATF Special Agent and his lack of resistance. After tasing and handcuffing Agent Burk, Officer Fihe should have immediately de-escalated his aggression and use of force once he retrieved and viewed Agent Burk's United States Department of Justice issued ATF credentials (photo) and included badge.

- 14 -

Officer Winchell should have intervened upon Agent Burk's credentials being viewed by Officer Fihe and prevented the continued hostility and aggression toward Agent Burk, while forcibly dragging Agent Burk backwards into the CPD squad car by the handcuffs behind Agent Burk' back.

Both Officers should have immediately initiated the call for an ambulance upon tasing Agent Burk multiple (photos of physical contact burn marks on Agent's Burk show a minimum of three (3) separate taser deployments to his lower back) and being made verbally aware of a pre-existing medical condition, instead of Agent Burk having to request his own medical attention.

CPD Officers and CPD On Scene Supervisor Sgt. Tolson should have considered Agent Burk's advisement of his medical condition, Agent Burk's physical distress, and the fact that the outdoor air temperature on July 7, 2020, at the time of the incident was approximately 95 degrees Fahrenheit. CPD Officers, CPD Sgt. Tolson, and/or CPD Fire Department responding ambulance personnel should have responded to Agent Burk's repeated pleas for a drink of water, so as not to exacerbate his medical condition and or suffer heat exhaustion while handcuffed. CPD personnel and CPD Fire Department personnel should have allowed Agent Burk to have a drink of water but claimed it was "against their policy." CPD personnel should not have ignored Agent Burk's plea to retrieve his water personal water bottle from his government issued vehicle at the scene, after Agent Burk's vehicle keys were in the possession of CPD.

CPD Officers and/or Sgt. Tolson should have conducted a more thorough in custody search of Agent Burk's person and located the DOJ PIV ID Card hanging around Agent Burk's neck.

CPD Officers and/or Sgt. Tolson should have conducted a thorough examination of Agent Burk's credentials, instead failing to observe Agent Burk ATF Badge contained within.

CPD Officers and/or Sgt. Tolson should have expedited a search of Agent Burk's GOV. If done, CPD Officers would have immediately noticed obvious LE equipment and ATF identifiers, such as a mounted police radio, emergency lights/controls, assorted ATF case files, ATF issued M4 rifle (in trunk), and ATF issued/ marked "ATF Police" tactical/body armor vest (in trunk).

CPD should have proper control mechanisms in place to prevent the surreptitious, negligent, malicious, and or careless distribution of body cam footage that is sensitive in nature.

CPD Chief and or Assistant Chief should have immediately notified ATF SAC McPherson and or ASAC Herndon upon being made aware of the incident and actions of CPD officers involving Agent Burk. CPD has a longstanding working relationship/partnership with ATF by way of CPD officer being assigned to the Columbus Field office as ATF Task Force officers.

As to CPD's post incident investigation, CPD executive leadership should have met with Agent Burk and ATF Columbus executive leadership following the incident to discuss the incident, discuss remedy, issue apologies, and discuss the prevention and processes to prevent future such incidents.

As part of the internal CPD Use of Force investigation, CPD should have coordinated with Agent Burk's Division SAC regarding any statement to be made by Agent Burk to CPD. CPD should have taken appropriate steps to contact Agent Burks chain of command in their effort to solicit a statement from Agent Burk in person and not a random phone call to Agent Burk's cell phone.

**INTERROGATORY No. 21:**

Identify any acts you believe the City/CPD should not have taken in their investigation of the Incident but did.

**ANSWER:**    Objection.  Plaintiffs' expert will identify the proper investigative steps the City/CPD should have taken in accordance with the case schedule.  See response to Interrogatory No. 20.

To the extent this Interrogatory refers to responding to the scene, Plaintiffs adds that Officer Fihe should not have given overly aggressive and conflicting commands while pointing his loaded duty firearm by first ordering Agent Burk to show his credentials and then ordering Agent Burk to get on the ground.

Officer Fihe should have recognized upon making contact with Agent Burk, that Agent Burk presented no visible threat and was attempting to establish a normal LE to LE interaction and identify himself.

Officer Fihe should not have disregarded the merit of Agent Burk's credentials when he retrieved and viewed them after tasing and handcuffing Agent Burk.

CPD Officers should not have failed to locate the additional DOJ PIV identification card hanging around Agent Burk's neck when he was subjected to a search of his person while handcuffed.

Officer Fihe should not have let his anger dictate his actions, treatment, and disparaging comments of Agent Burk to other officers on scene.

Officer Fihe should not have excessively tased Agent Burk while Agent Burk was on the ground and continuing to identify himself, advise of his medical condition, and direct the Officers to retrieve his ATF credentials from his left cargo pocket.

Officer Fihe should not have aggressively and forcefully pulled Agent Burk by his cuffed hands backwards into the squad car.

Officer Fihe should not have orally berated and besmirched Agent Burk's character at the scene of the incident to defend the excessive force and harsh treatment of Agent Burk.

Officer Fihe should not have unlawfully seized Agent Burk in the back of his cruiser after seeing his ATF credentials.

CPD Officers should not have violated Agent Burk's civil rights.

CPD Officers and on scene supervisor Sgt. Tolson should not have kept Agent Burk restrained in excessively tight handcuffs behind his back for the entire duration of the incident (about 50 minutes). Sgt. Tolson and CPD officers should not have failed to do a thorough examination of Agent Burk's credentials.  Upon being released from custody, Sgt. Tolson observed gathering and inventorying his ATF property and personal effects.  Upon seeing Agent Burk open and inspect his credentials, Sgt. Tolson informed Agent Burk that Agent Burk's badge, which is contained as part of his credentials, was never observed.  Sgt. Tolson and or CPD officers should not have failed to ensure all items in Agent Burk's possession were located and observed to expedite confirming Agent Burk was an ATF Special Agent, thus preventing added physical and emotional injury.

CPD Officers and FD ambulance personnel should not have denied Agent Burk humane access to hydration/water under the excessive heat conditions, physiological stress, and being informed of Agent Burk having an existing medical condition (treated with medication that contains a diuretic (HCTZ) component requiring Agent Burk to stay hydrated). When Agent Burk requested water or the water bottle kept in his government vehicle, Agent Burk should not have been told it was "against their policy" to provide him with a drink of water.

- 18 -

As to CPD's post incident investigation, CPD should not have allowed the malicious distribution, copying, recording, transmitting, of the body cam footage of the incident.  The footage was evidence in a standard CPD Use of Force investigation., which involved a federal agent and should have remained confidential and treated with care.

CPD should not have made a random unsolicited phone call via a person identifying themself as a CPD Sgt. Berman (unknown to Agent Burk) in solicitation of a statement from Agent Burk regarding the Incident.

**INTERROGATORY No. 22:**

Describe the investigation you believe the City/CPD should have performed to determine the nature or circumstances of the Incident.

**ANSWER:**    See Interrogatory Nos. 20-21.

**INTERROGATORY No. 23:**

Identify each specific act or omission by a City employee and/or CPD police officer that you believe deprived you of a federally protected right.

**ANSWER:**    See Complaint and Interrogatories Nos. 20-21.  Stating further, the force—as a whole—CPD Officers applied to Agent Burk was constitutionally excessive in several ways, including but not limited to, Officers Fihe and Winchell (in general terms): (1) immediately drawing their firearms on Agent Burk when he presented no visible threat, (2) repeatedly tasing him when he presented no visible threat, (3) cuffing him when he presented no visible threat; (4) manhandling him and locking him in the back of a cruiser without probable cause to arrest him, and (5) refusing him water and medical treatment.

**INTERROGATORY No. 24:**

Identify and describe each piece of your property damaged or destroyed as a result of the accident.

**ANSWER:**

- Oakley prescription eyeglasses

- Under Armor, Heat Gear polo shirt (grey)

- 511 Tactical Series pants (tan)


**INTERROGATORY No. 25:**

Identify all the usual activities, activities of daily living, hobbies, passions, and any other activities you have not been able to engage in as a result of the Incident.

**ANSWER:**

- Agent Burk can no longer work in the field as an ATF agent.

- Agent Burk could not do any physical tasks in support of his high-risk pregnant wife during her 3rd trimester, due to shoulder injury and subsequent surgery.

- Agent Burk cannot hold up his newborn/infant/toddler son due to post-surgical physical limitation, severe pain and discomfort of right shoulder.

- Agent Burk cannot perform normal physical household activities that required use/strain of right shoulder, such as stacking heavy objects, hoisting, chopping firewood, tree trimming, putting items away that require reaching over head or reaching back with right arm/shoulder.

- Agent Burk cannot hunt and cannot shoulder a rifle or draw back a compound bow.

- Agent Burk cannot assist family and friends with carrying or lifting heavy objects.

- Agent Burk cannot perform physical chores in relation to his family farm like cutting timber, harvesting field stone, and heavy equipment maintenance.

- Agent Burk cannot play volleyball, football, baseball/ softball, golf, or wrestling/MMA type training.

- Agent Burk cannot push a lawnmower or rototill a garden.

- Agent Burk cannot sleep without physical discomfort, experience nightmares in association with the Incident, and continuous anxiety/mental playback of the Incident.

<u>**REQUEST FOR PRODUCTION OF DOCUMENTS**</u>

       1.     All documents upon which you relied to assert any of the allegations contained in your Complaint.

<u>**RESPONSE:**</u>        See accompanying production.  Plaintiffs are producing all relevant,

responsive, and non-privileged documents in their possession.


       2.     For the preceding 10 years, all complaints, investigations, and conclusions (whether orally or in writing) about Agent Burk in performing his duties.

<u>**RESPONSE:**</u>        Objection.  Plaintiffs object to this request to the extent it requests

information not reasonably calculated to lead to the discovery of admissible evidence.  Stating

further, Plaintiffs object to the extent that this Interrogatory seeks documents protected by

attorney-client privilege, work product, mediation, or investigatory privilege.  The ATF and DOJ

strictly prohibits Plaintiff from disseminating their documents without direct approval.


       3.     For the preceding 10 years, all complaints, investigations, and conclusions (whether orally or in writing) about Agent Burk in any manner (including, but not limited to any, allegations of dishonest conduct and/or theft).

<u>**RESPONSE:**</u>        Objection.  Plaintiffs object to this request to the extent it requests

information not reasonably calculated to lead to the discovery of admissible evidence.  Stating

further, Plaintiffs object to the extent that this Interrogatory seeks documents protected by

attorney-client privilege, work product, mediation, or investigatory privilege.  The ATF and DOJ

strictly prohibits Plaintiff from disseminating their documents without direct approval.


       4.     All training materials used to train Agent Burk regarding the interaction with members of law enforcement.

<u>**RESPONSE:**</u>        See responses to Interrogatories.  Agent Burk does not believe such

materials exist and is not in possession of them.

- 22 -

5.      Produce any ATF protocol, standards, or guidelines for agents' interactions with law enforcement, including but not limited to members of the Columbus Division of Police.

**RESPONSE:**          See responses to Interrogatories.  Agent Burk does not believe such

materials exist and is not in possession of them.

6.      Any and all statements, including drafts of such statements, given by any person that relates to the occurrence in question.

**RESPONSE:**          Objection.  Plaintiffs object to this request to the extent it requests

information not reasonably calculated to lead to the discovery of admissible evidence.  Stating

further, Plaintiffs object to the extent that this Interrogatory seeks documents protected by

attorney-client privilege, work product, mediation, or investigatory privilege.  The ATF and DOJ

strictly prohibits Plaintiff from disseminating their documents without direct approval.  See

accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged

documents in their possession.

7.      All documents upon which you base your calculation of the total amount of

money you seek from Defendant City of Columbus to compensate you for your Losses.

**RESPONSE:**          Objection.  Plaintiffs have yet to determine this evolving amount.  See

accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged

documents in their possession.

8.      All documents upon which you base your calculation of the dollar value of the Economic Losses that you suffered as a result of the Incident.

- 23 -

**RESPONSE:**            Objection.  Plaintiffs have yet to determine this evolving amount.  See

accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged

documents in their possession.


9.      All documents upon which you base your calculation of the dollar value of the
Noneconomic Losses that you suffered as a result of the Incident.

**RESPONSE:**            Objection.  Plaintiffs have yet to determine this evolving amount.  See

accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged

documents in their possession.


10.      All documents from which you obtained any of the information you provided in
response to the interrogatories served on you in this case.

**RESPONSE:**            See accompanying production.  Plaintiffs are producing all relevant,

responsive, and non-privileged documents in their possession.


11.      All documents you have provided to or received from any person whom you
intend to call as a lay witness at any trial or hearing in this matter.

**RESPONSE:**            Objection.  Plaintiffs have not yet decided the lay witnesses they intend to

call at trial.  Plaintiffs will provide such information in accordance with any pertinent scheduling

order.  See accompanying production.  Plaintiffs are producing all relevant, responsive, and non-

privileged documents in their possession.


12.      All documents you have provided to or received from any person whom you
intend to call as an expert at any trial or hearing in this matter and that (a) relate to compensation
for the expert's study or testimony; (b) identify any of the facts or data that you or your attorney
provided to the expert and that the expert considered in forming his or her opinions; or (iii)
identify assumptions that you or your attorney provided to the expert and that the expert relied on
in forming his or her opinions.

**RESPONSE:** Objection. Plaintiffs have not yet decided the lay witnesses they intend to call at trial. Plaintiffs will provide such information in accordance with any pertinent scheduling order. See accompanying production. Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

13. All documents you intend to use as an exhibit at any hearing or trial in this matter.

**RESPONSE:** Objection. Plaintiffs have not yet decided what exhibits they intend to use at trial. Plaintiffs will disclose their eventual exhibits in accordance with any case schedule. Without waiving the foregoing objections, see accompanying production for the relevant documents currently in Plaintiffs' possession. Plaintiffs will supplement as discovery continues.

14. All documents that you have provided to or received from any person who you believe saw the Incident and that relates in any way to the Incident.

**RESPONSE:** See accompanying production. Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

15. All photographs, video recordings, and audio recordings of the Incident.

**RESPONSE:** See accompanying production. Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

16. All documents related to any specific act or omission by Joseph Fihe that you believe deprived you of a federally protected right.

**RESPONSE:** See accompanying production. Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

17.     All documents related to any specific act or omission by Kevin Winchell that you believe deprived you of a federally protected right.

**RESPONSE:**          See accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

18.     Any written communication (including, but not limited to, any email, text message, or social media discussion) pertaining in any way to the Incident, and or this lawsuit, that you have exchanged with Summer Hilfers.

**RESPONSE:**          No communications exist.  Agent Burk communicated with his wife verbally on the phone or in-person.

19.     All documents from which you obtained any information used to calculate the total amount of money you seek from Defendant City of Columbus in this civil action as compensation for your medical expenses (if you are alleging that you incurred medical expenses due to the Incident).

**RESPONSE:**          Objection.  Plaintiffs have yet to determine this evolving amount.  See accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

20.     All documents showing, demonstrating, or establishing any of your medical expenses (if you are alleging that you incurred medical expenses due to the Incident).

**RESPONSE:**          Objection.  Plaintiffs have yet to determine this evolving amount.  See accompanying production.  Plaintiffs are producing all relevant, responsive, and non-privileged documents in their possession.

21.     All documents related to any of your medical expenses (if you are alleging that you incurred medical expenses due to the Incident).

**RESPONSE:**          See accompanying production.  Plaintiffs are producing all relevant,

responsive, and non-privileged documents in their possession.


22.     All documents showing, demonstrating, establishing, creating, or relating to any
of the physical or psychological injuries you allege that you sustained in the Incident.

**RESPONSE:**          See accompanying production.  Plaintiffs are producing all relevant,

responsive, and non-privileged documents in their possession.


23.     Copies of all City/ CPD customs, polices, and practices that were the moving
forces behind any of the constitutional violations you've claimed in your complaint.

**RESPONSE:**          Objection.  See Complaint ¶¶ 60-74 for Plaintiffs' theory of recovery.

CPD policies, customs, and practices are in Defendants' possession.  Plaintiffs will identify such

policies and any additional documents responsive to this Request as discovery continues.


24.     All documents showing, demonstrating, establishing, or creating any City/CPD
custom, policy, or practice that was the moving force behind any of the constitutional violations
you've claimed in your complaint.

**RESPONSE:**          See response to Request 23.


25.     All documents showing, demonstrating, establishing, or creating any City/CPD
custom, policy, or practice that allows, permits, facilitates, encourages, or directs City employees
and/or CPD police officers to use unreasonable force.

**RESPONSE:**          See response to Request 23.


26.     All documents showing, demonstrating, establishing, creating, or relating to any

City/CPD training, supervision, or discipline, you believe to have been deficient.


**RESPONSE:**          See response to Request 23.

- 27 -

Respectfully submitted,


/s/ Jonathan N. Bond
Rex H. Elliott     (0054054)
Barton R. Keyes    (0083979)
Jonathan N. Bond   (0096696)
Cooper & Elliott, LLC
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (Facsimile)
rexe@cooperelliott.com
bartk@cooperelliott.com
jonb@cooperelliott.com

Attorneys for Plaintiffs

## VERIFICATION

State of Ohio
County of Franklin, SS:

     I, James A. Burk, Jr., do hereby state that the foregoing Responses and Objections to

Defendant, City of Columbus's, First Set of Interrogatories are true and correct to the best of my

knowledge and belief.

_____
James A. Burk, Jr.

Sworn to before me and subscribed in my presence this ___ day of April, 2022.

_____
Notary Public

- 29 -

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that the foregoing Discovery Responses were served on

the following counsel of record, by email transmission, this 12th day of May, 2022:

> William A. Sperlazza, Esq.
> City of Columbus, Department of Law
> Zach Klein, City Attorney
> 77 North Front Street
> Columbus, Ohio 43215
> WASperlazza@columbus.gov
>
> Attorney for Defendants

/s/ Jonathan N. Bond