

PLAINTIFF'S EXHIBIT
Leighton-2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES A. BURK, JR., et al., | Case No. 2:20-cv-6256 |
| Plaintiffs, | Judge James L. Graham |
| v. | Magistrate Judge Chelsey M. Vascura |
| CITY OF COLUMBUS, OHIO, et al., | **EXPERT REPORT OF KEITH LEIGHTON** |
| Defendants. | |

I have been asked by the Columbus City Attorney's Office to review and give my opinion regarding an incident that occurred on July 7, 2020 involving ATF Agent James Burk and Columbus Police Officers Joseph Fihe and Kevin Winchell. My opinions in this case are based on my knowledge, skill, experience, training, and education, and are held to a reasonable degree certainty in the field of law enforcement.

## I. QUALIFICATIONS AND PUBLICATIONS

My knowledge, skill, experience, training, and education are stated in my resume which is included with this report.

I have written a book titled, *Badges, Bad Guys & Busts: Untold Stories of a DEA Agent,* StoneBear Publishing (May 18, 2021).

## II. BACKGROUND

I started DEA Basic Agent Training (BAT) at the FBI Academy in Quantico, VA on November 3, 1991. At that time, the DEA did not have their own academy and shared the FBI Academy with other FBI training recruits. From day one, we were taught that our position as U.S. Federal Agents gave us an incredible amount of power and authority and that power and authority, granted by the U.S. Government through the Attorney General, could be a great asset or a dangerous liability that could result in an arrest, a lawsuit, injury or even death if used improperly.

We were constantly reminded that the anonymity that went along with being a plain clothes law enforcement officer could help us stay out of sight from the criminals we pursued but it also meant that the public did not immediately identify us as law enforcement officers either which could be precarious. And this included other police officers and law enforcement agents.

While at the academy, we were put through scenarios and practicals in which we were tested by having law enforcement approach us while performing our duties to see what our response would

be. These law enforcement officers were actual DEA agents who were posing as actors to assist us in our training. Many had been police officers prior to becoming DEA agents, so they knew the importance of this training. We were always taught that if we were approached while performing our duties, we were to conduct ourselves in the following manner:

> *Respect — All law enforcement officers are equal. They are ALL to be respected. There is no hierarchy. A federal agent does not trump a local police officer.
>
> *Obey — Obey their commands. They do not know who you are.
>
> *Listen — State that you are a federal agent and inform them that you have a badge, credentials, and a weapon. After that, silence. Not another word is needed.
>
> *Cooperate — Do exactly what they say.... the first time. Do not argue, question, debate, or challenge. It will only make it worse.
>
> *Comply — Follow every order precisely, with respect, politeness, and manners.

During my 29-year career with the DEA, I have been approached by law enforcement, both professionally and in my private life. There were numerous times, especially in places like Miami where I served for seven years (1992-1999), where I would be on surveillance in the middle of the night in a part of town that wasn't the best place to be at 2:00 a.m. A resident would see a car running outside of their house and would call it in to 9-1-1 in fear that it was someone looking to rob them. The next thing I knew was that there was a marked police unit behind me with its emergency lights on asking to see my hands. I would comply and put them out the window immediately. I would then state, "Yes sir, no problem. I'm a federal agent with the DEA and when you are ready, I can show you my badge and credentials. I also have a firearm on me. I'm just letting you know for your safety." I would then comply with the rest of the orders until I had proven who I was. The transaction ended shortly after. They key was always de-escalation. This happened numerous times in my 29-year career. No swearing. No posturizing. No attitude. No questioning. Again, just like in the academy I kept reminding myself that they don't know who I am.

Even in my personal life, something like this would occur from time to time. Although, it has been many, many years since I have been stopped for speeding, I have been stopped once or twice in my life. As the officer approached my window, I would do the exact same thing with my hands on the steering wheel at ten and two. After I was asked for my license and registration, I would reply, "Yes sir, no problem. I'm a federal agent with the DEA and when you are ready, I can show you my badge and credentials. I also have a firearm on me. I'm just letting you know for your safety." I wouldn't even start to pull out my badge and credentials until the officer was at my door as anyone moving around in the vehicle ahead of time makes any officer extremely nervous and anxious about what they're going to encounter when they reach the vehicle. Why add to the stress? Let the officer decide when it's right for him or her to ask for the badge and credentials. Not the other way around. I would simply wait until he or she asked me.

I remember one time during an investigation that took place while I was assigned to the DEA Columbus, OH office. We had followed a target through the night to Logan, West Virginia. And, as the night went on, we lost the target a couple times and then found him again. On both occasions, I sped through the night to catch up to surveillance so that I could join the surveillance. And, not once but twice, I was stopped by the SAME West Virginia State Trooper for speeding. But each time I did the exact same — I sat and waited patiently until the trooper approached my car and allowed me to identify myself. I did not berate the trooper with a string of profanities for stopping me twice. I was then allowed to go on my way and re-join the surveillance team. The second time was funny since the trooper kept apologizing profusely over and over about how sorry she was for stopping me twice. But she didn't know. She was just doing her job.

## III. OPINIONS AND DISCUSSION

#1   Federal Agents are trained to conduct themselves in the following manner when approached by law enforcement:

> *Listen to and obey all commands no matter your thoughts are at the time. Even if this means being handcuffed, or asked to put your hands up, or lying on the ground. It will all be sorted out after. Remember, they don't know who you are.
>
> *Inform the officer(s) that you are a federal agent with DEA/ATF/FBI (whomever) and that you will show him/her your badge and credentials when THEY are ready. Also, inform them that you have a weapon on you (if applicable) and that you just want them to know this for their safety.
>
> *Be respectful at all times. Do not raise your voice. Do not swear at the officer(s). They are only doing their job.

#2   A federal agent should not be swearing at the officers. On the video you can hear Burk stating over and over that he is a "flicking federal agent." This is not de-escalating the situation and only ramping it up. A federal agent should have just put his hands up. Also, obey the commands. Be polite and respectful. Let them handcuff you if they insist. In the video the officer first asked Burk to see his hands. Then he asked Burk to show him some identification. And then to get on the ground. Burk did not comply with any of these. At one point, Burk tells the officer, "Ain't going to happen." Also, Burk states that he had his badge out. A badge is not identification. Fake badges can be purchased on the internet very easily. Even a legitimate badge does not have a number or a name on it. That's the reason an agent's credentials are so crucial. These have a number, a name, and a photo. Burk never offered to show his credentials to either the homeowner or the police officer.

#3   In addition to swearing and escalating the situation, not complying with the officer's commands, refusing to show his hands or credentials, and refusing to get on the ground, Burk states over and over that he's a "fucking federal agent." In my opinion, this is a power play meaning he's trying to demean the officer. In my training we were always instructed that a federal agent isn't better or more important than a local police officer or a state police officer.

3

We just have different jobs, roles, and responsibilities. Burk didn't say "I'm a fucking cop." Because the response would have been, "Who cares, so are we." Saying over and over that he's a "fucking federal agent" is demeaning. This is my opinion, but Burk was trying to control and dominate the situation and tell the officers that he has his own rules.

As stated above, my opinions are based on my knowledge, skill, experience, training, and education, and are held to a reasonable degree certainty in the field of law enforcement.

There are additional things that I would like to mention that are relevant to my three opinions in this case. I'm shocked that Burk was alone. We always worked in groups of 2-5 agents depending on the situation. But never alone. We were always concerned with safety and having a back-up. Additional personnel also means having corroboration, custody of evidence assistance and witnesses. Additionally, I'm shocked that Burk does not have a tactical vest on or any ATF markings. He is at the residence to seize an illegal firearm from an individual. What if that individual was to turn the firearm on Burk?

Why wasn't CPD contacted prior to Burk's arrival at the residence to assist? We always did this when I was with the DEA. We would request a marked unit to be on the scene with us to assist with having a uniformed presence, for crowd control, for handling the media if some news channel heard about the enforcement activity on a scanner, and for transport assistance. And Burk is out of the ATF Cincinnati office. We have an ATF office here in Columbus. Why wasn't this lead handed off to the ATF Columbus office? Did Burk even give the ATF Columbus office a heads up that he was in their area of responsibility (AOR)?

In paragraph 23 of the complaint, it states that the officers were armed with easily verifiable information that Burk was a federal agent. What is this information? Because that doesn't make any sense to me. To my knowledge, unless things after drastically changed since I retired on June 30, 2020, there is no way to verify if an individual is a federal agent. There isn't a hotline number to call or a database to search. So, what is the verifiable information? That the homeowner saw a badge through a window? A badge that you can buy online? And, being shown to her by an individual acting alone without any ATF markings on a jacket or shirt?

IV.  MATERIALS REVIEWED

The following materials contain the facts or data I considered in forming my opinions:

001 Complaint 12.04.20.pdf

IAB Database #202007-1014.pdf

911#1-2020-07-0713.54.25 Ch112.WAV

911#2-2020-07-07_14.09.25_Ch84.WAV

Administrative Interview (phone)-James Burk (Sgt. Berman) MP3

Administrative Interview (phone)-Joseph Fihe (Sgt. Berman)-08.04.2020.MP3

4

Administrative Interview (phone)-Kevin Winchell (Sgt. Berman)-08.04.2020.MP3

FIHE-Body Cam.mp4

WINCHELL-Body Cam.mp4

Joe_Fihe_CVS.mp4

Joe_Fihe-Rearseat_CVS.mp4

Kevin_Winchell_CVS.mp4

Kevin_Winchell_Rearseat_CVS.mp4

100 0606.JPG

100 0607.JPG

100 0608.JPG

100 0609.JPG

100 0610.JPG

100 0612.JPG

100 0613.JPG

100 0614.JPG

100 0615.JPG

Dispatch Audio.wav

## V.     EXPERT TESTIMONY

I have not testified as an expert at trial or by deposition during the previous 4 years.

## VI.    COMPENSATION

My fees in this case are at the rate of $250 per hour.

On December 20, 2022, Allison Lippman, Assistant City Prosecutor, City of Columbus, sent me an email and asked me to review the following materials:

DOJ Touhy Response

SA Burk Taser Recent Documents

ATF National Academy - Uniform Patrol

BDO 21-000859 - Deduped - Redacted

Burk - BDO - 16-000562

Burk v. Columbus (01)

Burk v. Columbus (2)

JABURK Training Record

James Burk eOPF

SA Burk Taser and CAT Range Sheets

Review of Documents:

1. DOJ Touhy Response:

-No comment

2. Taser Documents:

-Not sure how these apply as a taser was not used by Burk in the incident but on Burk
-Home office is Cincinnati

3. Nation Academy – Uniform Patrol Interaction:

-On page one, teaching points include, "Responding Locals – Follow their commands. They likely don't have the information you gave to dispatch."

4. Notice of Removal – Conduct Unbecoming (BDO):

-Burk was alone. No other agents were present. This is NOT standard procedure regardless of how many times Burk did this alone.

-Burk's attire did not have any markings that said ATF. He was not wearing a tactical/ballistic vest either, which I find very reckless as Burk knew that the subject was armed.
-Burk did show a badge to the subject but you can buy a badge on-line. You need more to identify yourself as a federal agent.
-There was no paperwork that was shown to the subject, like a warrant or target letter.
-A PIV card is just an access badge. That's it. It doesn't have any other function. No one, other than a federal employee, has any idea what a PIV card is.
-We always wore clothing with DEA markings like a jacket or a shirt. Even for a simple knock and talk.
-A lot of the performance appraisals were "meets expectations." These are not considered good evaluations.
-Burk was demoted to NICS investigations after the 2015/2016 alcohol incident in which he was charged and given subsequent discipline.
-Page 177. "These cases....... can be dangerous at times." So, why wasn't Burk wearing a tactical/ballistic vest? He knew that the subject was armed.


5. BDO – Alcohol Treatment:

-Burk was charged with theft from a local Kroger for replacing/switching price tags on bottles of wine. The ATF found this to be "Conduct Unbecoming of a Special Agent." In my honest opinion, Burk should have been terminated at this point. I have never heard of an agent being charged with a crime and being allowed to keep his or her job as a federal agent…in law enforcement!


6. Attorney to do List:

-The complaint never mentions how Burk responded to the officers, "I'm a fucking federal agent." And, "I ain't getting on the ground, it's not happening."
-The NICS assignment was given to Burk in 2016 as the result of disciplinary actions (According to the RAC) and was relieved of his role as the Division Tactical Advisor (DTA). It was a demotion.


7. Interviews:

-In the interview of the RAC, the RAC stated, "It is not a division standard to go out and do a knock and talk alone." Page 233
-In Burk's internal affairs interview, he admitted that he had a badge with a chain but didn't wear it. That doesn't make sense to me. Also, a senior agent would never keep his or her badge/credentials in their pocket knowing law enforcement will NEVER allow you to put your hands in your pockets to retrieve identification is there is a confrontation. Also, I find it ironic that the deciding official of the PRB made mention of the lack of ATF "markings", but all the immediate supervisors failed to mention this in all their letters of support. I suspect that this is because the incident happened in their back yard, in Columbus, to their agent, on their watch. If they did ANYTHING but support him it would reflect badly on them and their leadership. They meaning the RAC, ASAC and SAC.

-In Burk's internal affairs interview, he stated that he did not think he would do anything different in the future to prevent this from happening again. That is such a cavalier statement. Page 281.
-On page 289 Burk admitted that he has taken other agents with him in the past (but did not this time.) He stated that he has also coordinated with local authorities in the past (but not this time.)
-Page 296. A local police department is never going to call your agency to confirm employment. They are on a run for service. They don't have the time or that luxury. They don't have the resources as they don't know the number of the local ATF office which might not have mattered anyway as Burk was from the Cincinnati office.

8. JABURK Training Record:

-Burk failed his tactical firearms qualification on 06/28/2021? Am I reading that correctly? Is that a misprint? Because if it's correct, I'm not sure how Burk was allowed to carry a firearm.

9. Personnel Folder

-No comment

10. Firearms Folder:

-No comment

Final Thought:

Throughout the interviews I kept seeing references to "CPD could have de-escalated better" and "CPD didn't de-escalate very well." I think the individual solely responsible for escalating the situation is Burk. When he said, "I'm a federal fucking agent" and "Ain't getting on the ground, it's not happening" is that de-escalating? I have NEVER spoken to law enforcement like that in my 29-year career. It's no wonder that CPD was wary of Burk claiming to be a federal agent because a federal agent would NEVER SPEAK TO ANYONE IN LAW ENFORCMENT IN THAT MANNER. It's like a brotherhood. The two (2) CPD officers were probably thinking, "there's no way this guy is a federal agent, look at how he is talking to us and treating us."
Also, it is very apparent to me that Burk is one of those agents out there who think that federal law enforcement is better then local law enforcement. Unfortunately, there are a few out there and the DEA has them as well. I am not singling out ATF. I remember an old CPD buddy of mine who would cringe when anyone referred to him as "local law enforcement." He said that it always made him feel like a "knuckle dragger." I'm sure that these two (2) CPD officers felt like "knuckle draggers" that day, as well, with the way that Burk treated them.

Respectfully Submitted,

_____
Keith Leighton