# On-Scene Consulting

February 15, 2023

Mr. Jonathan N. Bond, Associate.
Cooper & Elliot, LLC.
305 West Nationwide Boulevard
Columbus, Ohio 43215

### Federal Rules of Civil Procedure 26 (a) (2) (B) Report

**JAMES A. BURK, JR., et al., Plaintiff,**
**vs.**
**CITY OF COLUMBUS, et al., Defendants.**
<u>**Case No. 2:20-cv-6256.**</u>

Dear Mr. Bond,

Thank you for retaining me to analyze and render opinions regarding the July 7, 2020, detention, and use of force of Mr. James A. Burk, Jr., by Columbus Police Department Police Officers Joseph Fihe, <u>No. 1875,</u> and Kevin Winchell, <u>No. 2218</u>, at 3359 Edgebrook Drive, Dublin, Ohio 43017.  Pursuant to the requirements of Rule 26, I have studied reports, photographs, videos, Columbus Police Department documents, Transcriptions of Digitally Recorded Depositions, and other material (<u>as listed under Materials Reviewed</u>) provided to me thus far regarding this case.

Please be advised that if additional documents related to this matter are provided, it may be necessary to write a supplemental report in order to refine or express additional opinions.  It is also necessary to state at the beginning of this report that I do not make credibility determinations in expressing my opinions.

Scott A. DeFoe
Principal
On-Scene Consulting, LLC


EXHIBIT
A

## On-Scene Consulting

**Materials Reviewed:**

1. Complaint, <u>Case No. 2:20-cv-6256</u>.

2. United States Department of Justice, United States Attorney, Southern District of Ohio, 12/1/2022, Re: James A. Burk, Jr., et al v. City of Columbus, et al, <u>Case No. 2:20-cv-6256</u>.

3. SABT Tactical Scenarios, (<u>Day 52</u>), Instructor Guide.

4. File 3, <u>BDO-21-000859</u>., _Redacted.

5. File 4-Burk-<u>BDO-16-000562bck</u>, (<u>003</u>), Redacted.

6. File 5-Burk_v_Columbus_02_BESS_ID's_Redacted, (<u>BUR-01-00001-000045.3</u>).

7. File 6, Burk_v_Columbus_02_BESS_ID's, (<u>003</u>), (<u>BUR-0200000010BUR-02-000082110</u>).

8. <u>File 7</u>, JA Burk Training Record, Redacted.

9. <u>File 8</u>, James Burk, e OPF_Redacted.

10. <u>File 9</u>, SA Burk, Taser, and CAT Range Sheet.

11. <u>File 19</u>, SA Burk, Taser Recertification Documents.

12. Columbus Division of Police, Use of Force Report, 2014.

13. Columbus Division of Police, Use of Force Report, 2015.

14. Columbus Division of Police, Use of Force Report, 2016.

15. Columbus Division of Police, Use of Force Report, 2017.

16. Columbus Division of Police, Use of Force Report, 2018.

17. Columbus Division of Police, Use of Force Report, 2019.

On-Scene Consulting

18.  Columbus Division of Police, Use of Force Report, 2020.

19.  The Ohio State University, John Glenn College of Public Affairs, Research Evaluation of the City of Columbus' Response to the 2020 Summer Protests, Trevor L. Brown, Ph.D., Carter M. Stewart, J.D.

20.  Photographs.

21.  Columbus Police Department, Division Directive, Number 4.03, Revised 12/30/14, Surveillance/Stakeouts/Encountering Out of Uniform Personnel.

22.   Columbus Police Department, Division Directive, Number 2.04, Effective 3/30/12, Chemical Irritants and Intermediate Weapon Regulations.

23.  Columbus Police Department, Division Directive, Number 2.01, Effective 08/01/87, Use of Force.

24.  Division of Police, Internal Affairs Bureau Employee Report for Joseph A. Fihe, 11/29/11-11/29/21.

25.  Division of Police, Internal Affairs Bureau Employee Report for Kevin M. Winchell, 11/29/11-11/29/21.

26.  Peace Officer Basic Training, Civil Liability & Use of Force, Unit 2-Topic 6, Ohio Peace Officer Training Commission, Education and Policy Section, 1/1/2018.

27.   Peace Officer Basic Training, Civil Liability & Use of Force, Unit 2-Topic 6, Ohio Peace Officer Training Commission, Education and Policy Section, 1/1/2018. Power Point.

28.  Columbus Police Department Training Documents.

29.  Columbus Police Department, Use of Force Reports, (2020-2021).

30.  Columbus Police Department Police Officer Joseph A. Fihe, Cruiser Video, No Audio, (46:05).

On-Scene Consulting

31. Columbus Police Department Police Officer Joseph A. Fihe, Cruiser Video, Rear Seat, No Audio, (46:05).

32. Columbus Police Department Police Officer Kevin Winchell, Cruiser Video, No Audio, (35:08).

33. Columbus Police Department Police Officer Kevin Winchell, Cruiser Video, Rear Seat, No Audio, (35:08).

34. Audio-Recording, 911 #1-2020-07-07_13.54.25_CH112, (14:59).

35. Audio-Recording, 911 #2, 2020-07-07_14.09.25_84, (6:10).

36. Dispatch Audio-Recording, (19:35).

37. Administrative Telephonic Interview of Special Agent James Burk by Columbus Police Department Sergeant Berman, (1:24).

38. Administrative Telephonic Interview of Police Officer Joseph Fihe by Columbus Police Department Sergeant Berman, (12:31).

39. Administrative Telephonic Interview of Police Officer Kevin Winchell by Columbus Police Department Sergeant Berman, (9:17).

40. Body-Worn Camera, (BWC), 7/7/2020, Police Officer D. Trionfante, (8:49).

41. Body-Worn Camera, (BWC), 7/7/2020, Sergeant Tolman, (6:05).

42. Body-Worn Camera, (BWC), 7/7/2020, Sergeant Tolman, (41:13).

43. Body-Worn Camera, (BWC), 7/7/2020, Police Officer Joseph Fihe, (21:24).

44. Body-Worn Camera, (BWC), 7/7/2020, Police Officer Kevin Winchell, (14:08).

45. Complaint Narrative, IAD Data Base No. 2020-07-1014, & Miscellaneous Documents, (P 00156-180).

46. Channel 1, Radio Traffic, 07/07/2020, P00181-258.

On-Scene Consulting

47.  Photographs, (P 00259-267).

48.  Columbus Police Department, Notice of Denial, (P00004).

49.  Columbus Police Department, Police Officer Joseph Fihe, Internal Affairs Bureau History, (P00005-19).

50.  Columbus Police Department, Police Officer Joseph Fihe, Personnel File, (P000020-90).

51.  Columbus Police Department, Police Officer Kevin Winchell, Internal Affairs Bureau History, (P00091-99).

52.  Columbus Police Department, Police Officer Joseph Fihe, Personnel File, (P00100-149).

53.  Run Print Out and Report, (P00150-155).

54.  Body Worn Camera, (BWC), Jace Dalgard, (4:15), (P00272).

55.  Miscellaneous Documents for James Burk, (P00348-393).

56.  Deposition Transcript and Exhibits of Joseph Fihe taken on 9/30/2022.

57.  Deposition Transcript of Kevin Winchell taken on 9/30/2022.

**Summary**
The following statement summaries represent documents/statements that were used in part during my review but are in no way meant to be exhaustive. The documents listed in the Materials Reviewed Section of this report represent the full library of documents reviewed thus far and used as a basis for my opinions.

On-Scene Consulting

**The below listed information is verbatim portions of Complaint, Case No. 2:20-cv-6256 and based on my review of the materials and videos in this matter:**

- On the afternoon of July 7, 2020, Alcohol & Tobacco Firearms, (ATF), Special Agent James Burk, visited the home at 3359 Edgebrook Drive, Dublin, Ohio 43017, for a "knock and talk," NCIS retrieval. Special Agent James Burk's intent was to contact a male subject (purchaser) of ATF Investigation Number 773000-20-001 and advise him of the reasoning for the prohibited determination and facilitate the suitable recovery of the firearm. Special Agent James Burk was attired in a pair of 5.11 tactical cargo pants, a golf shirt and Danner tactical work boots. In addition, his ATF badge and credentials were in his pants left cargo pocket. In addition, Special Agent James Burk was carrying an in the waist concealed pistol holster that contained his semi-automatic duty pistol. In addition, Special Agent James Burk had a PIV Access Badge on a lanyard around his neck.

- Special Agent James Burk knocked on the front door of the aforementioned residence and advised the occupant that he was ATF Special Agent James Burk and his badge number. Ms. Sarah Al Maliki refused to open the door and instead advised Special Agent James Burk that she was contacting 911. Special Agent James Burk advised Ms. Sarah Al Maliki he was not leaving and waited until the arrival of the Columbus Police Department. At no time during the interaction with Ms. Sarah Al Maliki at the aforementioned residence did Special Agent James Burk make any threats, (BUR-02-000035.12).

- Columbus Police Department Dispatch was advised by Ms. Sarah Al Maliki of the aforementioned residence that the man at her front door identified himself as Mr. James Burk and that he was a Special Agent with the ATF and that his badge number was 4672. In addition, Columbus Police Department Dispatch remained on the line with Ms. Sarah Al Maliki and at no time during the call until the arrival of Columbus Police Department Police Officer Joseph Fihe, did Special Agent James Burk make any threats, (BUR-02-000035.12)

- According to Columbus Police Department Police Officer Joseph Fihe's, he arrived at 3359 Edgebrook Drive, Dublin, Ohio 43017, approximately 7 minutes after being dispatched to the call. Special Agent James Burk waited until the arrival of Columbus Police Department Police Officer Joseph Fihe.

- At the time Columbus Police Department Police Officer Joseph Fihe arrived, Special Agent James Burk, stood outside the front door of 3359 Edgebrook Drive,

On-Scene Consulting

Dublin, Ohio 43017, with a flat folder containing paperwork in his left hand. Special Agent James Burk had his right and left hands clearly visible as trained to minimize any concerns that he was a potential threat.

- Columbus Police Department Police Officer Joseph Fihe immediately unholstered his semi-automatic pistol as he left a position of cover (his police vehicle) and advanced towards Special Agent James Burk while simultaneously unnecessarily screaming for Special Agent James Burk to get onto the ground even though he was aware that Special Agent James Burk previously identified himself and his Badge Number, (4672), to Columbus Police Department Dispatch, noted at 13:55-13:58 of the Details for Incident No. P200498359, (BUR-02-00035.12). In addition, Special Agent James Burk was attired in recognizable traditional Special Agent/Law Enforcement Officer soft clothes attire. Police Officer Joseph Fihe pointed his semi-automatic pistol at Special Agent James Burk.

- Special Agent James Burk advised Columbus Police Department Police Officer Joseph Fihe that he was a federal agent and explained that he had his law enforcement credentials in his left pants pocket.

- Columbus Police Department Police Officer Joseph Fihe did not at any time advise Special Agent James Burk to simply produce his law enforcement credentials.

- Approximately 1 minute and 12 seconds after Police Officer Joseph Fihe arrived at scene, Police Officer Kevin Winchell arrived at scene. Police Officer Kevin Winchell immediately removed his semi-automatic duty pistol from his holster and left a position of cover, (his police vehicle) and immediately began to issue conflicting commands to Special Agent James Burk.

- Special Agent James Burk complied and laid on the ground in a prone position and placed his hands behind his back.

- Special Agent James Burk again advised Police Officer Joseph Fihe and Police Officer Kevin Winchell that he had his law enforcement credentials in the left pocket of his cargo pants. Columbus Police Department Police Officers Joseph Fihe and Kevin Winchell did not at any time advise Special Agent James Burk to simply produce his law enforcement credentials or just retrieve his credentials from the left pocket of his 5.11 tactical cargo pants.

On-Scene Consulting

- Columbus Police Department Police Officer Joseph Fihe handcuffed Special Agent James Burk's left hand without resistance from Special Agent James Burk.

- Columbus Police Department Police Officer Kevin Winchell positioned his body in a manner that prevented Special Agent James Burk from placing his left hand in the small of his back so he could be handcuffed.

- Columbus Police Department Police Officer Joseph Fihe utilized his Taser X26P, Conducted Energy Weapon (CEW) for one 5-second deployment in Drive Stun mode.

- Columbus Police Department Police Officers Joseph Fihe and Kevin Winchell applied the right handcuff to Special Agent James Burk's right wrist.

- Columbus Police Department Police Officers Joseph Fihe and Kevin Winchell escorted Special Agent James Burk to a police vehicle where he was placed into the rear seat.

- The rear seat belt was fastened which prevented Special Agent James Burk from entering the rear seat of the police vehicle. Instead of simply unfastening the seat belt to allow Special Agent James Burk access into the rear seat of the police vehicle, Columbus Police Department Police Officers Joseph Fihe and Kevin Winchell, used force to push and pull Special Agent James Burk into the rear seat.

**Opinions:**

Note: None of my opinions are intended to usurp the province of the jury and are not stated as ultimate issues. Rather, my opinions involve the consistency of the officers' actions with standard police practices.

**Opinion Number 1**

It is my opinion based on my review of the facts, testimony, and Body-Worn Camera (BWC) video/audio footage, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell failed to establish a tactical plan from a position of cover prior to contacting Special Agent James Burk. Police Officer Kevin Winchell arrived approximately 1 minute and 12 seconds after Police Officer Joseph Fihe. There was no rush. Police Officers are trained to create Time and Distance.

On-Scene Consulting

Police Officers are trained to work together and function as a team. In order to ensure officer safety and to ensure an appropriate outcome, the primary officers and cover officers must effectively communicate with one another.

**The Contact Officer is responsible for**:
- Initiating action.

**Conducting the essential business required, such as, but not limited to:**
- Alerting cover officer that a weapon or contraband is located on the suspect.
- Conducting thorough systematic searches.
- Maintaining control of the suspect.
- Recovering evidence.
- Recording necessary suspect or incident information.
- Handling radio communication.
- Communicating with the cover officer, as appropriate, regarding force options selection (i.e., Less Lethal).

**The Cover Officer is responsible for**:
- Protecting the contact officer.
- Alerting the contact officer that a weapon or contraband is located on the suspect.
- Maintaining constant observation of the overall situation; being aware of possible dangers and potential interferences.
- Providing a command presence to discourage hostile acts, assaults, or escapes by the suspect.
- Securing any weapons or contraband; this allows the contact officer to continue searches.
- Preventing the destruction of evidence.
- Intervening with appropriate force to protect the contact officer if the suspect reacts violently.
- Communicating with the contact officer, as appropriate, regarding force option selection (i.e., Less Lethal).

Police Officers must approach every contact with officer safety in mind. Complacency, overconfidence, poor planning, or inappropriate positioning can leave officers vulnerable to attack.

The tactical plan that should have outlined verbal skills (defusing and de-escalation techniques) and Less Lethal Force options such as: empty hands, physical strength, and compliance techniques, soft or hard hand techniques, the X-26 P Conducted Energy

## On-Scene Consulting

Weapon, (CEW), Taser with an effective range of 7-15 feet and maximum range of 21-25 feet, ASP/ baton, and Oleoresin Capsicum "OC" spray (Mace).

Police Officers should always be aware of surrounding objects or areas that may be utilized for cover or concealment.

**Cover**:
- Anything that may stop or deflect an opponent's bullets.
- Should be used when involved in an armed encounter if possible.
- The type of cover will depend on the type of firearm received, (firearm, shotgun, rifle).

**Examples of Cover:**
- Cement block or brick walls.
- Buildings.
- Portion of the vehicle with the engine block.
- Trees.

**Be aware of and use available cover:**
- In every situation, identify items that would provide adequate cover if needed.
- Use or be ready to use, and/or move to cover when necessary.

**Ask for backup when necessary:**
- If assistance is requested, wait for that assistance to arrive before abandoning cover or acting.

**Be aware of distance and positioning:**
- Identify, plan, then move to positions of advantage.
- Avoid abandoning a safe location or rushing into a potentially dangerous situation.

In addition, it is my opinion, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell, simply could have arrived and staged a few residences away from 3359 Edgebrook Drive, Dublin, Ohio 43017, in a safe position to maintain a line of sight of 3359 Edgebrook Drive, Dublin, Ohio 43017, and Special Agent James Burk. In addition, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell could have quickly formulated a tactical plan and designated the Contact Officer and Cover Officer. The designated Contact Officer and the Contact Officer should have remained at a position of cover at their police vehicles by exiting their police vehicles and using the A-Pillar as cover. The Contact Officer could have simply asked Special Agent James Burk for his official Law Enforcement Credentials that were located in the left cargo pocket of his 5.11 tactical cargo pants. In

## On-Scene Consulting

addition, the Contact Officer could have engaged Special Agent James Burk in a conversation which would have revealed that he was an ATF Special Agent who was conducting a federal investigation at 3359 Edgebrook Drive, Dublin, Ohio 43017, for a "knock and talk," NCIS retrieval. Special Agent James Burk could have advised the Contact Officer that his intent was to contact a male subject (purchaser) of ATF Investigation Number 773000-20-001 and advise him of the reasoning for the prohibited determination and facilitate the suitable recovery of the firearm.

In addition, this type of call for service is not unique for law enforcement. In fact, during my twenty-six year law enforcement career, I was contacted by numerous law enforcement agencies based on my appearance and the fact that I was in another law enforcement agency's jurisdiction conducting an official investigation. During many of these contacts, I was attired in 5.11 tactical cargo pants conducting "knock & talk," investigations. In addition, I have responded to numerous calls for service and contacted municipal and federal law enforcement agencies who were conducting criminal investigations in Los Angeles. In those situations, the law enforcement officers properly identified themselves which concluded the encounter. At no time during dozens of encounters with municipal and federal law enforcement agencies, did it necessitate me pointing a loaded firearm at the law enforcement officer(s) or directing the law enforcement officer(s) into a prone position. In addition, I have never had a loaded firearm pointed at me and I was never ordered into a prone position on the ground by law enforcement officers when I was contacted by law enforcement officers in another jurisdiction.

In addition, I base my opinion on the following fact and testimony:

- According to Police Officer Joseph Fihe, he could have waited for Police Officer Kevin Winchell to arrive before acting, (Deposition Transcript of Joseph Fihe, Page 47).
- According to Police Officer Joseph Fihe, he walked towards Special Agent James Burk as he asked to see his hands, (Deposition Transcript of Joseph Fihe, Page 61).

Lastly, I base my opinion on my twenty-eight- year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

On-Scene Consulting

## Opinion Number 2

It is my opinion based on my review of the facts, testimony, and Body-Worn Camera (BWC) video/audio footage, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell should not have unholstered and or exhibited their semi-automatic pistols at any time during this incident as Special Agent James Burk's actions never rose to the level where the use of lethal force would be necessary. In addition, it is my opinion Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell's actions unnecessarily escalated the situation and were unreasonable based on the totality of the circumstances.

Unnecessarily or prematurely drawing or exhibiting a firearm limits a Police Officer's alternative in controlling a situation, creates unnecessary anxiety on the part of citizens, and may result in an unwarranted or negligent discharge of the firearm. A Police Officer's decision to draw or exhibit a firearm should be based on the tactical situation and the Police Officer's reasonable belief there is a substantial risk that the situation may escalate to the point where deadly force may be justified.

Unintentional/Negligent Discharges: Safe firearm handling is every Police Officer's personal and professional responsibility. Accidents do not just happen.

Unintentional/Negligent Discharges are the result of:
- Violating the rules of firearms safety.
- Inadequate knowledge or skill regarding the operation and use of firearms.
- Improper or inadequate care and maintenance.
- Poor judgment or lack of common sense.

Basic Firearm Safety Rules:
- Always be aware of where the firearm is pointing.
- A "safe direction" is one where an unintentional/negligent discharge of the firearm will not hurt the person handling the firearm or others.
- A firearm should only be pointed at a target if the Police Officer is willing and prepared to shoot.

In addition, it is my opinion Special Agent James Burk's initial decision not to lay on the ground in a prone position was reasonable as it clearly put him in a poor tactical position. Special Agent Burk was conducting a federal investigation of a subject who was possibly in possession of a loaded firearm and resided at 3359 Edgebrook Drive, Dublin, Ohio 43017, which was in direct line of sight.

On-Scene Consulting

<u>In addition, I base my opinion on the following facts and testimony in this matter</u>:

- According to Police Officer Joseph Fihe, he does not recall the Columbus Police Department Dispatcher discussing any type of knife or gun in this incident, (<u>Deposition Transcript of Joseph Fihe, Page 32</u>).
- According to Police Officer Joseph Fihe, he does not recall the Columbus Police Department Dispatcher relaying that Special Agent James Burk made any verbal threats of violence, (<u>Deposition Transcript of Joseph Fihe, Page 32</u>).
- According to Police Officer Joseph Fihe, he could see the folder in Special Agent James Burk's hand, (<u>Deposition Transcript of Joseph Fihe, Page 43</u>).
- According to Police Officer Joseph Fihe, before he "drew" his gun, Special Agent James Burk did not make any aggressive moves and had not reached for anything, (<u>Deposition Transcript of Joseph Fihe, Page 32</u>).
- According to Police Officer Kevin Winchell, when he arrived, he did not see an imminent threat or any weapon, (<u>Deposition Transcript of Kevin Winchell, Page 9</u>).

Lastly, I base my opinion on my twenty-eight- year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## **Opinion Number 3**

It is my opinion based on my review of the facts, testimony, and Body-Worn Camera (<u>BWC</u>) video/audio footage, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell <u>failed</u> to use de-escalation and defusing techniques during their interaction with Special Agent James Burk. In fact, it is my opinion Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell's inability to control their emotions unnecessarily escalated the situation. In addition, it is my opinion, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell, issued simultaneous conflicting commands to Special Agent James Burk.

In addition, law enforcement officers are taught that they should attempt to de-escalate and utilize proper defusing techniques throughout an incident. Defusing is a process of reducing the potential for violence and bringing emotional level to a manageable level to restore order. The primary objective is to calm the person so that a conversation can take place and the use of force can be avoided.

## On-Scene Consulting

In addition, <u>law enforcement officers should be taught the below listed De-escalation Techniques</u>:

- Speak simply, move slowly.
- Announce actions before taking them.
- Attempt to gain voluntary compliance.
- Be friendly, patient and encouraging but remain professional.
- Reassure the person that no harm is intended.

Effective communication may enable a Police Officer to gain cooperation and voluntary compliance in stressful situations.

The vast majority of law enforcement responsibilities involve effective communication. Communication involves both command presence and words resulting in improved safety.  <u>Effective communication</u>:

- Provides skills that reduce the likelihood of physical confrontation.
- Can result in a reduction of injuries.
- Renders more effective public service and improves community relations.
- Decreases public complaints and internal affairs investigations.
- Decreases civil liability.
- Lessens personal and professional stress.

When reasonable under the totality of the circumstances, Police Officers should gather information about the incident, assess the risks, assemble resources, attempt to slow momentum, and communicate and coordinate a response.  In their interaction with subjects, Police Officers should use advisements, warnings, verbal persuasion and other tactics and alternatives to higher levels of force.  Police Officers should recognize that they may withdraw to a position that is tactically more secure or allows them greater distance to consider or deploy a greater variety of force options.  Police Officers shall perform their work in a manner that avoids unduly jeopardizing their safety or the safety of others through poor tactical positions.

In addition, it is my opinion based on my review of Body-Worn Camera, (<u>BWC</u>), 7/7/2020, Police Officer Joseph Fihe, (<u>21:24</u>), Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell, <u>failed</u> to manage their emotions to include their self-control and anger during this incident.

Self-control is one of a Police Officer's greatest assets in dealing with a person or situation.  Self-control is maintaining composure to make sound judgments and decisions.

## On-Scene Consulting

<u>Self-Control</u>:
- Is a result of the development of confidence in one's skills.
- Comes through training, practice, and experience.
- Improves decision making/reaction time.
- Professional demeanor can have a positive influence on calming a subject, making it easier to take the subject safely into custody.

It is important to understand fear and anger since both can affect Police Officers' reactions during a dangerous situation.
- Uncontrolled fear and anger tend to decrease the Police Officers' ability to make sound judgments and decisions.
- Uncontrolled fear and anger tend to increase hesitation, verbal abuse, and unreasonable force.

<u>Unreasonable Fear</u>
- Generated in the officer's mind with no direct correlation to facts and situations.

In addition, it is my opinion Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell <u>failed</u> to comply with <u>Columbus Police Department, Division Directive, Number 4.03, Revised 12/30/14, Surveillance/Stakeouts/Encountering Out of Uniform Personnel</u>:

II. <u>Procedures</u>
A. <u>Personnel Challenging Possible Out-of-Uniform Law Enforcement Personnel</u>

1. Approach cautiously and identify yourself as a Police Officer.

2. Give clear, concise, **and** non-conflicting commands.

3. Instruct individuals claiming to be law enforcement personnel, whose identity you are not able to immediately confirm, to disarm in a safe manner and then produce their agency's identification. If the individual refuses to comply, treat the situation as any other encounter with an armed individual.

In addition, I agree with the Columbus Division of Police, Routing Sheet for Correspondence, <u>I.A.B. Database #202007-1014</u>, Sergeant _to review <u>D.D 4.03</u> with Officer Fihe, "regarding the shared responsibility in this situation and the importance of slowing things down."

## On-Scene Consulting

In addition, it is my opinion Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell <u>failed</u> to comply with <u>Columbus Police Department, Division Directive, Number 2.01, Effective 08/01/87, Use of Force</u>:

II. <u>Policy Statements</u>:

A. General

1. Sworn personnel shall attempt to de-escalate a situation by using trained techniques, such as building rapport, communication skills, maintaining a safe distance, utilizing a barrier, etc., when it is safe to do so.

<u>In addition, I base my opinion on the following facts, videos, and testimony</u>:

- According to Police Officer Joseph Fihe, he admits that before he arrived at the location, there was a possibility that the man out front was a law enforcement officer, (<u>Deposition Transcript of Joseph Fihe, Page 48</u>).
- According to Police Officer Joseph Fihe, he never asked Special Agent James Burk to put his papers down, (<u>Deposition Transcript of Joseph Fihe, Page 32</u>).
- According to Police Officer Joseph Fihe, he agrees that at <u>5:19</u> of his BWC he gave Special Agent James Burk three orders in rapid succession, "let me see your hands," "I need to see some ID," and "get on the ground now," (<u>Deposition Transcript of Joseph Fihe, Page 67</u>).
- According to Police Officer Joseph Fihe, he agrees that when he arrived, he did not ask Special Agent James Burk to show him an ID or what law enforcement agency that he was with, (<u>Deposition Transcript of Joseph Fihe, Page 91</u>).
- According to Police Officer Kevin Winchell, when he ordered Special Agent James Burk to the ground, he went to the ground, (<u>Deposition Transcript of Kevin Winchell, Page 11</u>).
- According to Police Officer Kevin Winchell, he never asked Special Agent James Burk to identify himself, (<u>Deposition Transcript of Kevin Winchell, Page 11</u>).
- According to Police Officer Kevin Winchell, he believes Special Agent James Burk mentioned more than once that he was a federal agent which was consistent with what the Dispatcher advised, (<u>Deposition Transcript of Kevin Winchell, Pages 13-14</u>).

In addition, I base my opinion on my twenty-eight years of law enforcement experience where I responded to thousands of calls for service and have effectively utilized defusing techniques, de-escalation techniques, verbal strategies, and active listening skills to reduce the potential for violence and bring the emotional level of the incident to a manageable level.

## On-Scene Consulting

Lastly, I base my opinion on my twenty-eight- year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

### Opinion Number 4

It is my opinion Columbus Police Department Police Officer Joseph Fihe, used unreasonable, inappropriate, and unnecessary force when he utilized his Taser X26P, Conducted Energy Weapon (CEW) for one 5-second deployment in Drive Stun mode on the back of Special Agent James Burk.

In addition, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell knew or should have known that when an individual is in a face-down position, and breathing may become labored:

- Weight is applied to the person's back, the more weight, the more severe the degree of compression.
- The individual experiences increased difficulty breathing.
- The natural reaction to oxygen deficiency occurs-the person struggles more violently.
- The officer applies more compression to subdue the individual.

It is important for officers to bear in mind that there are many reasons a subject may be resisting arrest or may be unresponsive.  In addition, based on my review of Body-Worn Camera, (BWC), 7/7/2020, Police Officer Joseph Fihe, at (7:42), Police Officer Kevin Winchell ordered Special Agent James Burk to place his right arm behind his back but due to Police Officer Kevin Winchell's position, it prevented him from complying.

In addition, it is my opinion, Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell failed to comply with Columbus Police Department, Division Directive, Number 2.04, Effective 3/30/12, Chemical Irritants and Intermediate Weapon Regulations:

3.  Sworn personnel may use an intermediate weapon to protect themselves or another person from harm, to effect the arrest of or gain control of a physically aggressive/resistive subject, or to prevent or stop the commission of a criminal offense.

Lastly, I base my opinion on my twenty-eight- year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

On-Scene Consulting

## Opinion Number 5

It is my opinion based on the totality of the circumstances Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell unnecessarily handcuffed Special Agent James Burk. As discussed in prior opinions in this report, they simply could have asked Special Agent James Burk to produce his identification.

In addition, it is my opinion, based on my review of Columbus Police Department Police Officer Joseph Fihe's Body-Worn Camera, (BWC), 7/7/2020, at (10:30), Police Officer Joseph Fihe and Police Officer Kevin Winchell used inappropriate, unnecessary, and unreasonable force when they forced Special Agent James Burk into the rear of the police vehicle.

In addition, based on my review of Police Officer Joseph Fihe's Body-Worn Camera, (BWC), 7/7/2020, at (10:30), the rear seat belt was fastened which prevented Special Agent James Burk's from properly sitting in the rear passenger seat of the police vehicle. Instead of simply unfastening the seat belt to allow Special Agent James Burk's access into the rear seat of the police vehicle, Columbus Police Department Police Officers Joseph Fihe and Kevin Winchell, used inappropriate, unreasonable, and unnecessary force to push and pull Special Agent James Burk's into the rear seat.

Lastly, I base my opinion on my twenty-eight- year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## Opinion Number 6

It is my opinion there was a gross lack of situational awareness and fundamental tactical errors in this incident. It is also my opinion that there was a failure Columbus Police Department to provide proper training to Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell on the following subject matter: Cover and Concealment, Tactical Plan, Working as a Team, Verbal Strategies, Active Listening Skills, Defusing and De-Escalation Techniques, Duty to Intervene and Intercede, Professional Behavior/Ethical Responsibility, Taser X26 P Conducted Energy Weapon, Use of Force and Encountering Out of Uniform Personnel.

In addition, it is my opinion that ratification of the use of force and Columbus Police Department Police Officer Joseph Fihe and Police Officer Kevin Winchell's conduct prior to the use of unreasonable, inappropriate, and unnecessary force can be seen as

On-Scene Consulting

endorsing and perpetuating inadequate training and failure to enforce written polices and established standards.

Lastly, I base my opinion on my twenty-eight-year law enforcement career as a Supervisor, I have investigated over 100 Use of Force Incidents as well as being personally involved in the use of lethal and less than lethal force incidents.

## My Qualifications for Reviewing this Case:

My opinions are based on my education, training, and experience. Upon my graduation in June 1988 from Northeastern University in Boston with a Bachelor's Degree in Criminal Justice, I was hired as Criminal Investigator/Special Agent, GS-1811. Upon completion of Criminal Investigator/Basic Agent School at the Federal Law Enforcement Training Center (FLETC), 6-Month academy, I was assigned to the Organized Crime Drug Task Force where I functioned as an agent and undercover operative. The investigations focused on targeting criminal organizations that were involved in large scale drug smuggling and money laundering operations.

I was assigned to the Office of the Special Agent In-Charge, in San Francisco from August 1988 until I joined the Los Angeles Police Department in November of 1989. While in the academy, I was selected by the staff to be my Recruit Class Leader. Upon my graduation from the LAPD Academy, I was assigned to 77th Division. In addition to being assigned to 77th Division, I was assigned to Northeast Division (Patrol), Northeast Division (Special Projects Unit-SPU), Northeast Division C.R.A.S.H (Gang Detail). I was selected to be transferred to Operations Central Bureau C.R.A.S.H., where I was assigned to a plain clothes detail targeting specific gangs throughout Operations Central Bureau.

I was selected to be a Police Officer III at Wilshire Area Vice where I functioned as an undercover operative targeting prostitution, gambling, bookmaking, and other Vice related offenses. While working Wilshire Vice, I was ambushed and received two gunshot wounds. I received the Purple Heart in 2010. Upon return from my injuries, I attended mandated Field Training Officer School and was assigned as a Field Training Officer (FTO) at Wilshire Division. I trained recruits upon their graduation from the Los Angeles Police Academy in tactics, use of force, report writing, vehicle stops, calls for service, court testimony, emergency procedures, pursuit policy, accident investigations, perimeters, Department policies and procedures, and effective communication skills. While assigned as a Field Training Officer, I was involved in an In-Policy Lethal Use of Force incident.

## On-Scene Consulting

I was promoted to the rank of Detective and attended the LAPD Detective School. Upon completion of LAPD Detective School, I was assigned to Wilshire Area Narcotics, Field Enforcement Section, where I functioned in an undercover capacity.

I was promoted to the rank of Sergeant I and assigned to Hollenbeck Division. Prior to my assignment, I attended the mandated LAPD Supervisor School. In conjunction with LAPD Supervisor School, I was selected to attend the West Point Leadership Academy Supervisor Training. The training focused on team building, leadership, and decision making. While assigned to Hollenbeck Division, I conducted roll call training on a daily basis on numerous subject matters to include Use of Force Options (<u>Non-Lethal and Lethal</u>), Tactics, Calls for Service, Calls for Service involving the Mentally Ill, Vehicle Pursuit Policy, LAPD Policies and Procedures, Use of Force Policy, Updated Legal Bulletins, Training Directives, and other Standardized Roll Call Training. I directly supervised Police Officers and provided supervisory oversight during calls for service, tactical situations, perimeter tactics, containment and control issues and use of force incidents. I conducted audits, personnel investigations, Standard Based Assessments (<u>Ratings/Evaluations</u>), Use of Force Investigations, Administrative Projects, and prepared commendations for Police Officer's field performance. While assigned to Hollenbeck Division, I was selected as the Officer-In-Charge of Hollenbeck Division's Special Enforcement Group, (<u>SEG</u>). I directly supervised (<u>14</u>) Police Officers and Detectives assigned to the Unit. SEG worked in conjunction with Hollenbeck Detectives and specifically targeted career criminals in Hollenbeck Division. I provided ongoing mandated Department Training as well tactical, firearms, less than lethal force, lethal force and search warrant tactics training to Police Officers and Detectives. SEG prepared and served numerous search warrants. I provided search warrant tactical briefing and de-briefing of each warrant at the conclusion of the of the search warrant service. I completed audits, administrative projects, Use of Force Investigations, personnel complaints, and other administrative duties as deemed necessary by the Area Commanding Officer.

During this time, I was assigned to Internal Affairs Division (<u>IAD</u>), Headquarters Section. I investigated personnel complaints that exceeded the scope for a geographical Division. At the conclusion of my assignment to IAD, I was selected to Management Services Division, Special Projects, Office of the Chief of Police. I completed numerous in-depth staff projects for review by the Chief of Police. In addition, I conducted research and edited the 2000 LAPD Department Manual.

Also, during this time, I earned my Master's Degree in Public Administration from California State University, Long Beach.

On-Scene Consulting

I was selected as a Sergeant II at 77th Division Vice. I directly supervised (10) undercover Vice Officers and four uniformed Police Officers. I provided all facets of training to the Police Officers assigned to Vice to include Use of Force Policy, Legal Updates, Department Directives, Training Bulletins, Standardized Roll Call Training, Tactics Training, Undercover Operations Training, Surveillance Training, and any other training deemed necessary by the Area Commanding Officer. I conducted audits, personnel investigations, administrative projects, Use of Force Investigations, and special projects.

During this time, I was selected by the Chief of Police to be loaned to the Rampart Corruption Task Force. I conducted Use of Force audits and Internal Affairs Audits on Specialized Units in Central Bureau and South Bureau.

In 2000, I was selected to Metropolitan Division K9 Platoon as a Sergeant II+1. I directly supervised (16) K9 Handlers. Metropolitan Division K9 conducted K9 searches for the entire Department covering all Patrol Divisions and Specialized Units. I provided all facets of training to the K9 Officers to include K9 Operations, tactics, search warrant services, Mobile Field Force Options, Less than Lethal Force Options, Lethal Force Options, Department Directives, Training Bulletins, and other training dictated by the Officer-in-Charge and Commanding Officer. In addition, I taught K9 Operations at LAPD In-Service Training, Watch Commander School, Sergeant School, Field Training Officer (FTO) School and Detective School. While assigned to K9, I investigated and completed K9 contacts (bite investigations), personnel complaints, and Use of Force Investigations. In addition, I directed and was directly involved in Use of Force incidents. I received the LAPD Medal of Valor and LAPD Police Star for two lethal use of force incidents while assigned to K9.

In 2005, I was selected as a Sergeant II+1 in Special Weapons and Tactics (SWAT). I directly supervised (60) SWAT Officers. I conducted and facilitated all facets of SWAT training to include Weapons Training (.45 caliber, MP-5, M-4, Benelli Shotgun, Remington 870 Bean Bag Shotgun, .40mm, 37mm, X-26 Taser) on a monthly basis. In addition, I facilitated and conducted training in the following training Cadres: Breacher (Explosive), Crisis Negotiation-Mental Health, MEU, SMART, Suicide Prevention, Counter-Terrorism Cadre, Climbing, Hostage Rescue, Sniper Training, Air Support Training (Fast Rope, Aerial Platform Shooting). I directly supervised SWAT missions and High-Risk Search Warrant Services to include all facets (preparation, briefing, deployment, de-briefing). I was the Supervisor-in-Charge of the Crisis Negotiation Team, (CNT). I provided on-going Crisis Negotiation Training, mental health training,

## On-Scene Consulting

Tactical de-briefs of SWAT incidents, 40-hour POST Certified CNT School, and suicide prevention training. I worked in conjunction with the mental health community to provide and facilitate training with LAPD SMART, LAPD Mental Evaluation Unit (MEU), Behavioral Science Services Section (BSS), and Didi Hirsch Suicide Prevention Training. In addition, I assisted the West Point Military Academy with the development of their crisis negotiation curriculum.

During this time, I was selected as the LAPD SWAT representative to respond to Mumbai India with LAPD Counterterrorism and Las Vegas Metropolitan Division Police Department Counterterrorism following the terrorist attack in November 2008. I taught use of force, tactics, and SWAT deployment to 250 Mumbai Special Tactical Police Officers. Upon my return, I assisted with the development of Multi-Assault, Counter-Terrorism Action Capabilities, (MACTAC).

In June 2010, I retired from the Los Angeles Police Department with over 20 years of service to pursue an opportunity in the private sector. I held supervisory positions for the last 14 years of my career. During my tenure with the LAPD, I received over 100 Commendations including: The Medal of Valor, Purple Heart, and the Police Star.

From June 2010 through April 2013, I was the Vice President of Security Operations at Caruso Affiliated in Los Angeles, CA. My responsibilities included identifying and conducting Risk and Vulnerability Assessments for all Caruso Affiliated Developments, projected developments/investments, and residences. I utilized strategic-level analysis from the intelligence community, law enforcement and the private sector. I identified and monitored potential or actual incidents among critical infrastructure domains and all personal and professional interests of Caruso Affiliated. I mitigated expected threats. I utilized preplanned, coordinated actions in response to infrastructure warnings or incidents. I responded to hostilities. I identified and eliminated the cause, or source, of an infrastructure event by the utilization of emergency response measures to include on-site security personnel, local law enforcement, medical and fire rescue, and relevant investigative agencies. I conducted all facets of security training for the company and employees. I formulated Business Continuity and CEO Succession Plans for the company and all affiliated business interests. I conducted ongoing audits and internal investigations.

From June 2013 to June 2014, I was hired as a Deputy Sheriff at the Riverside Sheriff's Department where I conducted all facets of patrol service to include calls for service, self-initiated field activity, arrests, citations, and court testimony. In addition, during my tenure with the Riverside County Sheriff's Department, I was assigned to Robert Presley Detention

## On-Scene Consulting

Center (RPDC).  I processed and monitored inmate population from initial intake, housing, court, transportation, and release. I conducted searches of inmate population as well as the facility on an ongoing basis. I utilized my experience as a gang officer, Detective and Sergeant with LAPD to conduct interviews and interrogations of prisoners regarding a myriad of investigations. I provided information to Gang Detail. I functioned as a mentor to newly appointed Deputy Sheriffs as well as Supervisors. I attended and certified in RSO Supplemental Jail Operations Core Course prior to deployment at RPDC. I attended on-going training to include Use of Force (Lethal and Non-Lethal), Crisis Negotiation Training, Active Listening Skills Training, Report Writing, Response and Deployment to Critical Incidents and Proper Protocols and Procedures when responding to a medical incident or suicide.


From June 2014 to March 2016, I was the Director of Security at Universal Protection Service where I supervised 84 Security Professionals at the City National Plaza.  I conducted and facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals.  I ensured all Security Professionals were compliant with BSIS security training and licensing.  I conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft.  I conducted ongoing Risk and Vulnerability Assessments of the City National Plaza to include security staffing and deployment, Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED) and protocols to respond and mitigate threats.  I developed Security and Fire Life Safety Manuals for Security Professionals and Tenants. I coordinated all security efforts to ensure safety at Special Events.  I conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis.


From March 2016 to September 2017, I was the Director of Security at L&R Group of Companies.  I conducted Risk and Vulnerability (RAV) Assessments for all L&R Group of Companies developments and projected developments throughout the United States. I conducted and/or facilitated all Bureau of Security and Investigative Services (BSIS) training to Security Professionals.  I ensured all Security Professionals were compliant with BSIS security training and licensing.  I conducted the following training to Security Professionals and Tenants on an ongoing basis: Fire Life Safety, Evacuation Drills, Active Shooter, Workplace Violence, Security Procedures and Protocols, Responding to Incidents Involving the Mentally Ill, Hazardous Materials and Internal Theft. I conducted ongoing Risk and Vulnerability Assessments to include security staffing and deployment,

## On-Scene Consulting

Closed Circuit Television (CCTV), Crime Prevention through Environmental Design (CPTED), and protocols to respond and mitigate threats.  I developed Security and Fire Life Safety Manuals for Security Professionals and Tenants.  I coordinated all security efforts to ensure safety at Special Events.  I conducted internal investigations and worked in conjunction with the Los Angeles Police Department (LAPD) and the Los Angeles Fire Department (LAFD) on an ongoing basis as well as respective law enforcement agencies throughout the United States on security matters.

In 2020, I received my Master of Legal Studies from Pepperdine Caruso School of Law.

Attached are my curriculum vitae, listing of testimony and fee schedule.

Scott A. DeFoe