# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **James A. Burk, Jr., et al.,** | : | |
| Plaintiffs, | : | Civil Action No. 2:20-cv-6256 |
| v. | : | Judge Graham |
| **City of Columbus, et al.,** | : | Magistrate Judge Vascura |
| Defendants. | : | |

## PLAINTIFFS' OMNIBUS MOTION IN LIMINE

Plaintiffs respectfully request that the Court to exclude from trial argument, testimony, and evidence in five topics: (1) ATF's vacated personnel action to terminate Burk's employment and any ATF prior discipline; (2) defense expert Keith Leighton's testimony; (3) Plaintiffs' disability benefits; (4) jobs that are not "substantially equivalent" to an ATF law enforcement agent; and (5) experts testifying as to possibilities instead of probabilities.[1]

**I.     LAW**

A motion *in limine* is "made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). Courts generally use such motions "to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citation omitted). The Court derives its authority to rule *in limine* from its inherent authority to manage trials. *See Luce*, 469 U.S. at 41 n.4. But a ruling on a motion in limine, is "no more than a

---

[1] At the Final Pretrial Conference, Plaintiffs previewed a potential motion *in limine* to exclude Defendants from introducing duplicative expert witness testimony from two orthopedic surgeons. Given Defendants' indication that they may not call both, Plaintiffs will not burden the Court with unnecessary briefing. But, Plaintiffs reserve the right to raise the objection if appropriate at trial.

preliminary, or advisory, opinion . . . [and] the district court may change its ruling at trial for whatever reason it deems appropriate." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

## II. ANALYSIS

### MIL Topic 1: The Court should exclude evidence of ATF's a) vacated personnel action to terminate Burk's employment, and b) prior discipline.

From their exhibit list and discussions at the Final Pretrial Conference, Defendants have signaled that they intend to offer evidence of ATF's vacated action to terminate Burk's employment, as well as evidence of prior discipline having nothing to do with the July 7, 2020 excessive force incident at issue.[2] The evidence is irrelevant under Fed. R. Evid. 401, and alternatively, should be excluded under Fed. R. Evid. 403 because the danger of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs its probative value.

#### a. ATF reversed and vacated its termination action by agreeing to a medical disability retirement as the basis for Burk's separation.

Defendants are trying to use a vacated agency action to argue that Burk acted inappropriately during the excessive force incident. Perhaps recognizing that ATF's internal personnel actions do not tend to prove or disprove any element of Burk's excessive force claims or the related state law claims, Defendants have suggested that ATF's non-final action is relevant to Burk's lost income damages. But Burk's separation from ATF was indisputably a medical disability retirement. (*See* Plaintiffs' Trial Ex. 1, Letter Approving Disability Retirement, attached as Exhibit 1.)  Defendants appear to reason that even though disability retirement was the final, binding determination, they should be allowed to argue that the "real" (albeit unofficial and non-final) reason for Burk's separation from ATF was that he was terminated for conduct unbecoming

---

[2] Specifically, Exhibits O through Z in Defendants' exhibits list—with the exception of Exhibit W, a transcript of an interview with Burk—fit this category.

2

an ATF agent. But whatever the original outcome of ATF's internal personnel procedures, Burk's appeal to the United States Merit Systems Protection Board, or "MSPB," vacated that outcome when ATF agreed to a final determination inconsistent with ATF's prior internal action. Thus, the Court should not allow this irrelevant and prejudicial evidence or argument before the Jury.

When a Federal agency initially makes what might otherwise be a final determination if left alone, but then agrees to a settlement on appeal inconsistent with the original determination, the original determination loses any effect. In *Estabrook v. United States*, the United States asserted certain counterclaims against the bankruptcy trustee of a mortgage lender and sought summary judgment arguing that earlier debarment proceedings between the Department of Housing and Urban Development and the lender precluded the trustee from asserting certain affirmative defenses. 41 Fed. Cl. 283, 285 (1998). In the earlier proceedings, HUD had notified the lender that it was proposing debarment because of alleged violations of program requirements, and it suspended the lender pending resolution of the proceedings. *Id.* The lender sought a hearing, and a HUD Administrative Law Judge issued a determination barring the lender for five years. *Id.* The lender appealed, but before a merits hearing, the Secretary of HUD reached a settlement with the lender in which HUD terminated the suspension and debarment and the lender dismissed the appeal. *Id.* at 286–87.

In the litigation with the bankruptcy trustee, the United States argued that the debarment determination resolved the lender's affirmative defenses against it, precluding the trustee from asserting them. The Court of Federal Claims rejected the government's argument, holding: "the action by HUD that served as the agency's final decision with respect to the [lender] debarment proceeding was its entry into the settlement agreement." *Id.* at 287. "Rather than expressing the conclusion that the defenses [lender] had raised before the ALJ were not viable, HUD agreed to

lift the suspension and debarment in exchange, *inter alia*, for [lender's] promise not to bring suit against HUD seeking relief for the consequences of the suspension and debarment." *Id.* Thus, "instead of restoring finality to the ALJ's prior judgment, the settlement agreement's subsequent dismissal of the appeal replaced the ALJ's decision as the final agency action with regard to the [lender] debarment proceeding." *Id.*

The Court of Claims recognized that unlike a court judgment, an agency can reject its prior administrative determination by agreement with the party that was subject to the determination: "When the parties entered the settlement agreement, the ALJ determination existed and that determination would be a binding HUD decision if left in effect and not modified by HUD. But in granting [lender's] appeal of the ALJ determination and in ultimately deciding to settle the case on grounds inconsistent with the ALJ's decision, HUD modified the ALJ determination." *Id.* at 289. "In other words, the parties to a suit cannot agree to alter a court's final judgment, but an agency certainly has the authority, consistent with applicable statutes and regulations, to agree to reject a prior determination within the agency by entering into a settlement inconsistent with that prior decision." *Id.*

So too, here. Although the *Estabrook* decision involved the context of res judicata, the same principles apply because ATF's settlement with Burk is inconsistent with ATF's prior action to terminate him. And just as the federal contractor in *Estabrook* had a right to appeal the agency determination, Burk had a right to appeal ATF's termination action to the Merit Systems Protection Board, or "MSPB." *See* 5 U.S.C. § 7513(d) and 5 C.F.R. § 752.405(a). The MPSB has jurisdiction over removals from service. 5 C.F.R. § 1201.3(a)(1). By regulation, an agreed settlement is a final and binding resolution of the appeal. 5 C.F.R. § 1201.41(c)(2). Thus, "consistent with applicable

4

statutes and regulations," ATF "agree[d] to reject a prior determination within the agency by entering into a settlement inconsistent with that prior decision." *Cf. Estabrook*, *supra*, at 289.

For example, in its Settlement Agreement with Burk, ATF agreed to the following terms inconsistent with the prior action terminating him:

- ATF modified Burk's human resources files and Official Personnel File to "cancel the removal action for 'Conduct Unbecoming of a Special Agent' dated November 5, 2021[.]" (*See* Defendants' Trial Ex. Z, Settlement Agreement, at ¶ 1.a, attached as Exhibit 2.)

- ATF issued a decision "removing [Burk] due to 'Medical Inability to Perform'" and agreed "based on the medical information from [Burk's] that as of the date of [Burk's] removal, he was medically unable to perform the essential duties of the Special Agent position and that there is no foreseeable end to [Burk's] medical condition[.]" (*Id.* at ¶ 1.b.i.)

- ATF agreed that the Settlement Agreement "will be adopted by the MSPB as a final and binding resolution" of the appeal and "offered to the MSPB for inclusion in the record pursuant to 5 C.F.R. § 1201.41(c). (*Id.* at ¶ 13.)

- After this, the Office of Personnel Management approved Burk's application for disability retirement. (Exhibit 1.)

Accordingly, "consistent with applicable statutes and regulations," *Estabrook* at 289, ATF rejected its prior action to terminate Burk by entering into an agreement inconsistent with that prior action. As a result, any effort by Defendants to offer evidence of ATF's self-rejected internal personnel decisions or to argue that Burk's medical disability retirement is not really a medical disability retirement would risk unfair prejudice, confusing the issues, and misleading the jury. Even if ATF's rejected and vacated internal personnel action had any arguable relevance, those risks substantially outweigh any limited probative value it could have.

      **b.**      **Burk's prior discipline is not relevant either.**

Similarly, Defendants have also signaled they intend to use evidence of ATF's prior 2016 discipline of Burk relating to an incident at Kroger and his treatment for substance abuse. But this

5

evidence is also not relevant and, alternatively, the danger of unfair prejudice, confusing the issues, or misleading the jury would substantially outweigh its probative value. The evidence would also violate Fed. R. Evid. 404 as impermissible character evidence.

First, Defendants did not know of Burk's prior discipline or treatment, so they cannot contend that it affected their actions during the excessive force incident. Nor do the circumstances of the prior discipline or treatment affect whether or not Burk presented a threat that justified the nature and degree of force Defendants used on him during the excessive force incident. And, because ATF ultimately reversed and vacated its action to terminate Burk and agreed that his separation was due to medical disability retirement, ATF's 2016 discipline and Burk's prior substance abuse treatment have no probative value as to his ATF employment ending for the same reasons that ATFs vacated termination action has no probative value.

Moreover, at the Final Pretrial Conference, the Court and counsel discussed the issue of whether the conduct underlying ATF's 2016 discipline could be admissible as impeachment evidence. But Burk was never convicted of any criminal offense, the charges were dismissed, and the record of the charge itself was sealed. (*See* Record Sealing Entry, attached as Exhibit 3.) Accordingly, Fed. R. Evid. 404(B) and 609 preclude evidence regarding ATF's 2016 admission or the underlying circumstances, including evidence of the dismissed criminal charge.

**MIL Topic 2: The Court should exclude Keith Leighton's testimony as irrelevant.**

Defendants intend to offer the opinion testimony of Keith Leighton at trial on federal law enforcement practices. This testimony is irrelevant and would confuse the issues, as Defendants were not federal law enforcement officers but City of Columbus Police Officers (and they have a different expert witness, Patrick Vehr, who will testify about police practices).

By presenting opinion testimony about purported standards of conduct for a federal law enforcement officer, Defendants would improperly interject issues of comparative negligence into an excessive force analysis. "Comparative negligence, however, does not apply to damages for federal constitutional rights violations." *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 736 (6th Cir. 2002) (internal citations omitted). This is because to "apply comparative fault statutes in civil rights actions would result in the protection afforded under § 1983 to differ from state to state and would be inconsistent with the underlying policy of deterrence and compensation." *Id.* at 736, n.5. And not only are these issues irrelevant to federal civil rights claims; defendants have not alleged a comparative negligence defense. So even if the defense could apply to any of Burk's claims, Defendants have waived it. (Answer, ECF No. 2, at PageID # 25, ¶¶ 87–91.) *See* Fed. R. Civ. Pro. 12(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . contributory negligence[.]"); *Morris v. Gavan*, No. 1:08-cv-01436, 2009 U.S. Dist. LEXIS 56880, *10 n. 3 (N.D. Ohio July 1, 2009) ("Gavan did not plead, and therefore waived, the affirmative defense of contributory negligence.").

Leighton admits that he is not offering opinions as to the reasonableness or unreasonableness of the Defendants' use of force, but rather opinions about Burk's conduct assessed against purported standards of care for a federal law enforcement officer. (*See*, *e.g.*, ECF No. 52-1, Leighton Dep. at 15:17–18:19.) Specifically, Defendants asked Leighton to answer three questions: "One, what are federal agents trained to do in Burk's situation. So what are industry standards for plain-clothed on-duty federal agent[s] when encountering local law enforcement, responding to a burglary in progress, regarding that agent." (*Id.* at 17:25–18:4.) "Two, based on industry standards, how would local law enforcement officers expect a federal agent in Burk's situation to respond to their commands." (*Id.* at 18:5–7.) "Three, in this situation, what did Burk

7

do incorrectly." (*Id.* at 18:8–9.) Leighton's opinions about Burk's compliance with or deviation from "industry standards" is just another label for whether Burk met purported standards of care for an ATF agent.

And even then, Leighton admits that he has no training or experience as an ATF officer. (*Id.* at 40:22–25 (never served in ATF); *id.* at 44:12–17 (no training or experience as to ATF's internal policies); *id.* at 44:21–25 (no personal knowledge as to ATF's own divisional office training); *id.* at 45:7–10 (no personal knowledge as to how agents are supervised within ATF); *id.* at 46:12–15 (never been part of a knock-and-talk assignment to retrieve a firearm).) ***He even admits he has no understanding of the policies and procedures an ATF agent is to follow when carrying out an NICS retrieval, as Burk was doing the day of the excessive force incident.*** (*Id.* at 47:23–25.)

In sum, Leighton's testimony is irrelevant and confuses the issues, as it goes only to an inapplicable (and waived) comparative fault defense, and Leighton attempts to criticize Burk's conduct against purported ATF standards even though he admits he has no knowledge or understanding of those standards. The Court should exclude his testimony.

**MIL Topic 3: The Court should exclude evidence of Plaintiff's disability benefits as a collateral source.**

Defendants should be excluded from arguing or eliciting testimony on collateral sources. Plaintiff's economist, Dr. Harvey Rosen, prophylactically accounted for Burk's medical disability retirement benefits in his lost income analysis as an offset to Burk's lost earnings. (Rosen Report, ECF No. 108-1 at PageID 1793.) "Under the collateral source rule, the receipt of collateral benefits is deemed irrelevant and immaterial on the issue of damages." *Pirolozzi v. Stanbro*, No. 5:07-CV-798, 2009 U.S. Dist. LEXIS 129879, at *4 (N.D. Ohio July 24, 2009) (quotation omitted)

(declining to deduct social security benefits from damages awarded on § 1983 claim). *See also Schmid v. Bui*, No. 5:19-CV-1663, 2021 U.S. Dist. LEXIS 23658, at *3 (N.D. Ohio Feb. 3, 2021) (granting motion in limine to exclude disability benefits); *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2016 U.S. Dist. LEXIS 192835, at *13 (W.D. Ky. Mar. 9, 2016) (granting motion in limine to exclude social security disability benefits). *Accord Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 436 (6th Cir. 1999) (reversing district court's offset of disability pension benefits). Accordingly, Burk's disability benefit offset should be excluded from the trial.

> **MIL Topic 4: The Court should exclude evidence of jobs that are not "substantially equivalent" to an ATF law enforcement agent since it is irrelevant, will confuse the jury, and cause needless delay.**

Defendants have made clear that they intend to argue that Burk failed to mitigate his lost wage damages because he could have found another job after his disability retirement. But when attempting to prove failure to mitigate lost wage damages, Defendants should be excluded from introducing evidence of jobs that are not "substantially equivalent" to Burk's position at the time of the July 7, 2020 excessive force incident because such evidence is irrelevant, confuses the issues and misleads the jury. Fed. R. Evid. 401, 403.

"The burden to demonstrate failure to mitigate is on the defendant," who "must show substantially equivalent positions were available and the plaintiff failed to use reasonable diligence to seek them out." *Taylor v. Invacare Corp.*, 64 F. App'x 516, 523 (6th Cir. 2003). The defendant "carries the burden to show there exist substantially equivalent positions with virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status." *White v. Honda of Am. Mfg., Inc.,* 191 F. Supp. 2d 933, 952 (S.D. Ohio 2002) (citing *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)). *E.g., Hoback v. City of Chattanooga*, No. 1:10-CV-74, 2012 U.S. Dist. LEXIS 124794, at *36 (E.D. Tenn. Sep. 4, 2012)

(defendant failed to carry its burden of showing that plaintiff police officer failed to mitigate damages because "only viable" alternative was a position answering phones, which required "different responsibilities, status, and working conditions," so was not "substantially equivalent").

At the time of the excessive force incident in 2020, Burk was a federal law enforcement agent at ATF. The only evidence Defendants have elicited to support their claim that Burk failed to mitigate his lost wage damages is the opinion of Dr. Bruce Growick. Dr. Growick admittedly did not conduct an analysis on any comparable jobs within law enforcement that Burk could perform. (ECF No. 118, Growick Dep. at 58:25–59:4.) Instead, here is a comparison of Burk's prior employment with Dr. Growick's proposed alternative employment opportunities:

| Position | Annual Salary | Responsibilities |
|---|---|---|
| **Burk's Employment in 2020** | | |
| Special Agent, ATF | $139,515 (Rosen Report, ECF No. 108-1 at PageID 1796.) | Investigate potential violations of federal explosives, arson, firearms, and tobacco statutes. Coordinate investigation with federal and local law enforcement agencies. Field operations. (*See* Burk CV, attached as Exhibit 4; Growick Report, ECF No. 118-1 at PageID 3245–47) |
| **Dr. Growick's Employment Alternatives** | | |
| Emergency Dispatcher | $56,600 (Growick Report, ECF No. 118-1 at PageID 3242.) | Answer emergency and nonemergency calls and provide resources to assist those in need. (Growick Report, ECF No. 118-1 at PageID 3263.) |

| | | |
|---|---|---|
| Surveillance Monitor | $46,900<br>(Growick Report, ECF No. 118-1 at PageID 3242.) | Protect property from illegal activity. (Growick Report, ECF No. 118-1 at PageID 3257.) |
| Security Investigator | $60,600<br>(Growick Report, ECF No. 118-1 at PageID 3242.) | Gather, analyze, and report information to clients regarding legal or personal matters. (Growick Report, ECF No. 118-1 at PageID 3260.) |

Based on the foregoing, Defendants should be precluded from arguing or eliciting testimony that Burk failed to mitigate his damages based on alternative employment options that are not "substantially equivalent." Stated differently, Dr. Growick's purported employment alternatives should be excluded because the employment responsibilities are vastly different, and the pay is not comparable to Burk's position at the time of the excessive for incident. What's more, there is no evidence that the employment alternatives provide the same working conditions, promotional opportunities, or status as Burk's position as a Special Agent. These arguments and testimony are irrelevant. Fed. R. Evid. 401. And they will confuse the issue of damages mitigation at trial and waste time. Fed. R. Evid. 403.

### MIL Topic 5: The Court should exclude any expert opinions based on "possibilities" instead of "probabilities."

Defendants have indicated their intent to introduce evidence of *possible* causes of Mr. Burk's PTSD that occurred prior to the July 7, 2020 excessive force incident. Specifically, Defendants seek to elicit expert testimony that it is *possible* that Burk's PTSD is caused by his time in the Marines or serving local law enforcement. But Expert opinions cannot be speculative. Indeed, "the majority of courts require that an expert opinion express a probability, which is more than a mere possibility." *Johnson v. Memphis Light Gas & Water Div.*, 695 F.App'x 131, 137 (6th

Cir. 2017) (collecting cases). "A 'probability' means more likely than not." *Id.* (citing Probability, Probable, Black's Law Dictionary (6th ed. 1990)). And alternative causes, once offered "must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue." *Nationwide Agribusiness Ins. Co. v. David Martin Constr. Co.*, No. 3:18-cv-166, 2020 U.S. Dist. LEXIS 199005, at *25 (S.D. Ohio Oct. 26, 2020) (quotation omitted).

Here, it is undisputed that Burk suffers from PTSD as a result of the July 7, 2020 excessive force incident. (ECF No. 117, Copley Dep. at 65:19-65:24; Bienvenu Report, ECF No. 108-3 at PageID 1834.) Even so, Defendants seem to want to introduce evidence from both parties' expert psychiatrists—Dr. Joseph Bienvenu (Plaintiffs' expert) and Dr. LaRae Copley (Defendants' expert)—that it's *possible* that Burk's PTSD could be caused by his former service in the Marines and as a police office. (ECF No. 117, Copley Dep. at 65:25-67:10; ECF No. 111-1, Bienvenu Dep. at 33:10-34:15). Such possibilities are purely speculative. Defendants should be excluded from eliciting expert testimony, from either Dr. Bienvenu or Dr. Copley, regarding *possible* causes of his PTSD. Specifically, that is *possible* that Burk's PTSD was caused by his prior military or law enforcement service. And any expert opinions must be expressed with probability.

Moreover, even if Burk suffered from PTSD prior to July 7, 2020—and there's no evidence making it probable that he did—testimony or evidence related to such PTSD should be excluded because it is irrelevant to the question of liability and the determination of damages. Fed. R. Evid. 403, 403. First, with regards to liability, whether the officers used excessive force requires the jury to decide whether officers' use of force was objectively reasonable based on the facts and circumstances known to them at the time. So even if Burk suffered from PTSD prior to July 7, 2020, the officers did not know that, so the condition plays no part in determining liability.

12

Second, with regards to damages, even if Burk suffered from PTSD prior to July 7, 2020, Burk would be an "eggshell plaintiff," meaning "the tortfeasor must take the injured party as it finds him, and is liable for the full extent of the harm caused by its negligence, even if a more 'normal' plaintiff would not have suffered nearly as much." Meyers v. Wal-Mart Stores, East, Inc., 257 F.3d 625, 632 (6th Cir. 2001). There is no dispute that Burk suffers from PTSD as a result of the July 7, 2020 excessive force incident. (ECF No. 117, Copley Dep. at 65:19-65:24; Bienvenu Report, ECF No. 108-3 at PageID 1834.) Simply put, evidence of *possible* causes of PTSD that occurred before the July 7, 2020 excessive force incident should be excluded.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude: 1) ATF's vacated personnel action to terminate Burk's employment and any ATF prior discipline; (2) defense expert Keith Leighton's testimony; (3) Plaintiffs' disability benefits; (4) jobs that are not "substantially equivalent" to an ATF law enforcement agent; and (5) experts testifying as to possibilities instead of probabilities.

Respectfully submitted,

/s/ Abigail F. Chin
| | |
|---|---|
| Rex H. Elliott | (0054054) |
| Barton R. Keyes | (0083979) |
| Abigail F. Chin | (0097928) |

Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
rexe@cooperelliott.com
bartk@cooperelliott.com
abbyc@cooperelliott.com

Attorneys for Plaintiffs
James Burk and Summer Hilfers

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Plaintiffs' Omnibus Motion in Limine was filed electronically and served electronically on the following counsel of record, this 22nd day of October, 2024:

>Alexandra N. Pickerill, Esq.
>Sheena D. Rosenberg, Esq.
>Sarah N. Feldkamp, Esq.
>Assistant City Attorneys
>City of Columbus, Department of Law
>Zach Klein, City Attorney
>77 North Front Street
>Columbus, Ohio 43215
>anpickerill@columbus.gov
>sdrosenberg@columbus.gov
>snfeldkamp@columbus.gov
>
>Attorneys for Defendants

/s/ Abigail F. Chin