IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **James A. Burk, Jr., et al.,** | : | |
| Plaintiffs, | : | Civil Action No. 2:20-cv-6256 |
| v. | : | Judge Graham |
| **City of Columbus, et al.,** | : | Magistrate Judge Vascura |
| Defendants. | : | |

**PLAINTIFFS' BENCH BRIEF REGARDING
LAW ENFORCEMENT OFFICERS AS § 1983 PLAINTIFFS**

## I.  INTRODUCTION

At the October 24 telephone pretrial conference, the Court asked whether either side could locate any case law involving a law enforcement officer as a plaintiff in a 42 U.S.C. § 1983 Fourth Amendment claim to determine whether the Plaintiff's status affects the Fourth Amendment analysis. While such cases are not common, the decisions that Plaintiffs' counsel has located confirm that the standards do not change based on the Plaintiff being a law enforcement officer. This comports with the rules a) that alleged Fourth Amendment violations must take into account the objective reasonableness or unreasonableness of the *defendant* officer, and b) that comparative or contributory fault of a plaintiff is not a defense. To hold otherwise would mean that law enforcement officers have fewer constitutional protections against unlawful arrest and excessive force than civilians. The law forbids this watered-down version of constitutional rights.

## II.  LAW AND ARGUMENT

A plaintiff's employment as a law enforcement officer does not change anything when alleging 42 U.S.C. § 1983 Fourth Amendment claims. Rather, Courts apply the same Fourth Amendment standard as would apply to any other plaintiff. This is because "policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights."

*Pennington v. Metro. Gov't*, 511 F.3d 647, 651 (6th Cir. 2008) (quoting *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967)). "The Fourth Amendment's prohibition against 'unreasonable searches and seizures' therefore applies to police officers." *Id.*

For example, in *Ngo v. Storlie*, the Eighth District Court of Appeals affirmed a denial of summary judgment and qualified immunity when a defendant officer shot an undercover, plainclothes fellow officer several times. There, the undercover officer Ngo had been shot by a suspect and then radioed for help while trying to chase the suspect. One of the officers responding to the scene came upon Ngo on the ground and opened fire. *See Ngo v. Storlie*, 495 F.3d 597, 599–601 (8th Dist. 2007).

The Court considered several factors relating to the objective perception that Ngo did not pose a threat and that Nego was in fact the undercover officer and not the suspect. These included the fact that the defendant officer had earlier received a dispatch text message to units that there would be an undercover officer doing surveillance in the area; that an hour later, the defendant heard the plaintiff radio that he had been shot; that a few moments later, the defendant heard the plaintiff radio with a description of the suspect and mentioning that the plaintiff was in plainclothes; that the plaintiff had a gun near (but not in) his right hand; and that his bullet proof vest was partially visible with a microphone hanging down from it. *See id.* at 602–603.

In affirming the denial of summary judgment, the court analyzed the excessive force claim "under the Fourth Amendment's objective reasonableness standard." *Id.* at 602 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). This standard "looks at the totality of the circumstances," *id.* at 602 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)), "focusing on factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

2

[the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396 (alteration *sic*)). The court did not apply any different standards because of Ngo's status as a law enforcement officer.

In another example, the Central District of California likewise applied the typical Fourth Amendment standards to a plaintiff law enforcement officer. *Lallemand v. County of Los Angeles*, No. LA CV17-00781 JAK (SS), 2019 U.S. Dist. LEXIS 231548 (C.D. Cal. Feb. 5, 2019). To be sure, the case involved several significant differences from this case: First, the responding officers did not have the plaintiff's name, agency, and badge number (like they did here). Second, the responding officers were aware of a recent armed home invasion by individuals posing as Los Angeles Sheriff's Department Personnel. And third, at no point did any of the defendants draw a gun on or tase the plaintiff (like they did here). But the case also involved some similarities to this one: namely, a plainclothes officer going to someone's door to conduct their official business, and the resident contacting local police questioning the plaintiff's identity.

To provide some more context, the plaintiff in *Lallemand* was an officer with the Los Angeles District Attorney's Bureau of Investigations. In that capacity, he went to a residence to serve a subpoena. *Id.* at *4. At the time, he was dressed in plainclothes—which was permitted in the field—with an ID lanyard around his neck. *Id.*

When the officer plaintiff went to the residence, he was looking to serve a male witness. A woman opened the front door, but shut it after the officer plaintiff identified himself and asked whether the witness was inside. *Id.* at *5–6. The officer plaintiff stayed there, and a minute or two later saw a second woman exit a nearby house saying on the phone in Spanish, "Call the police. They will identify him if he is." *Id.* at *6. The officer plaintiff inferred that the woman was

3

speaking with the resident who had initially opened the door. Meanwhile, a male resident of another nearby house told the officer plaintiff that the subpoena target had moved out. *Id.*

The defendant, Los Angeles Sheriff's Department deputies, "responded to a report of a 'suspicious person' claiming to be a police officer." *Id.* The deputy defendants "were aware of a recent armed home invasion perpetrated by individuals impersonating LASD personnel." *Id.* They confirmed that the Sherriff's Department was unaware of the presence of any other law enforcement personnel at the location. *Id.* They observed that the officer plaintiff matched the physical description of the "suspicious person," was 10–15 feet from the house, and was agitated. *Id.* at \*7–8. He expressed frustration with the woman who had apparently called law enforcement. *Id.* at \*8. One of the deputy defendants tried to get the officer plaintiff to calm down when he noticed the badge and firearm on the right side of the officer plaintiff's waistband. Based on the officer plaintiff's appearance and behavior, and because he did not know whether the officer plaintiff was a law enforcement officer or impersonating one as reported, one of the deputy defendants restrained the officer plaintiff using a control hold of the officer plaintiff's hand and did a pat down search. *Id.*

The court's decision in *Lallemand* discusses a video of the encounter in detail. *See id.* \*\*9–14. The officer plaintiff and the deputy defendants exchanged words, with the plaintiff seeming annoyed that they did not believe that he was law enforcement, and with one of the deputy defendants saying that if plaintiff were a law enforcement officer, the officer plaintiff would "know what's up." *Id.* at 10. When one of the deputy defendants asked the officer plaintiff why he was behaving this way, the officer plaintiff asked what else they needed to see, stated that he'd been an officer for 21 years, and asked one of the deputies how long they had been an officer. Another deputy told the plaintiff, "Forget this. . . forget your DA badge . . . ." *Id.* at \*11. And as the officer

4

plaintiff and the deputies continued to exchange harsh words, one defendant directed the plaintiff to sit in the back of the police vehicle, which he did. *Id.* at *12.

In *Lallemand*, the Court granted the deputy defendants' motion for summary judgment as to certain parts of the plaintiff's claims but denied it as to others. First, the Court considered whether the officer plaintiff's detention was unreasonable. Such a detention must be "based on an officer's reasonable suspicion of criminal activity" and "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.'" *Id.* at *28–29 (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). While the court found that the initial detention (which, unlike here, was not at gunpoint) was likely reasonable, the "outcome is different once the Deputy Defendants had seized Plaintiff's gun and identification badge." *Id.* at *31. The court found the disputed facts sufficient to deny the defendants' motion for summary judgment as to the detention, but the court granted the motion as to alleged excessive force based on the control hold. *Id.* at **39, 43.

Notably, the plaintiff's status as a law enforcement officer did not alter the Fourth Amendment analysis. Instead, the court applied the same Fourth Amendment standards that apply to any claims involving unlawful detention or excessive force. *See id.* at *29–30 (citing *Florida v. Royer*, 460 U.S. at 500, *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1869, 20 L. Ed. 2d 889 (1968), and related unlawful detention cases); *id.* at **40–41 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) and related excessive force cases).

### III. CONCLUSION

Both *Ngo* and *Lallemand* show that, even when the plaintiff is a law enforcement officer, courts do not modify the Fourth Amendment standards for unlawful arrest/detention or excessive force claims. Doing so would afford law enforcement officials a "watered-down version of

5

constitutional rights," which the law forbids. *Pennington*, 511 F.3d at 651. It would also impermissibly interject comparative fault defenses into a 42 U.S.C. § 1983 analysis, which Defendants have not pled and which the law prohibits anyway. *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 736 (6th Cir. 2002) ("Comparative negligence, however, does not apply to damages for federal constitutional rights violations.").

        Respectfully submitted,

        /s/ Barton R. Keyes
| | |
|---|---|
| Rex H. Elliott | (0054054) |
| Barton R. Keyes | (0083979) |
| Abigail F. Chin | (0097928) |

Cooper Elliott
305 West Nationwide Boulevard
Columbus, Ohio 43215
(614) 481-6000
(614) 481-6001 (fax)
rexe@cooperelliott.com
bartk@cooperelliott.com
abbyc@cooperelliott.com

Attorneys for Plaintiffs
James Burk and Summer Hilfers

6

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing Plaintiffs' Bench Brief Regarding Law Enforcement Officers as § 1983 Plaintiffs was filed electronically and served electronically on the following counsel of record, this 29th day of October, 2024:

>Alexandra N. Pickerill, Esq.
>Sheena D. Rosenberg, Esq.
>Sarah N. Feldkamp, Esq.
>Assistant City Attorneys
>City of Columbus, Department of Law
>Zach Klein, City Attorney
>77 North Front Street
>Columbus, Ohio 43215
>anpickerill@columbus.gov
>sdrosenberg@columbus.gov
>snfeldkamp@columbus.gov
>
>Attorneys for Defendants

/s/ Barton R. Keyes