# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JAMES A. BURK, JR., et al., | |
| Plaintiffs, | Case No. 2:20-cv-6256 |
| v. | Judge James L. Graham |
| CITY OF COLUMBUS, et al., | Magistrate Judge Chelsey M. Vascura |
| Defendants. | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION IN LIMINE

1. <u>Plaintiff Burk's initial termination from ATF, and the reasons for it, are relevant and permissible evidence that must be considered by the jury</u>

Plaintiff argues that his termination from ATF, and the fact that it was based on his violation of policy while encountering the Defendant Officers, is not relevant to his lawsuit. He further argues that if this evidence is relevant, it is substantially outweighed by a risk of unfair prejudice. Plaintiff Burk continuously refers to his termination as a "vacated" decision. This characterization is not supported by the evidence. The settlement agreement which Plaintiff signed to resolve his appeal of termination expressly stated that the termination decision and analysis would stay in Plaintiff Burk's file and would be given to those who make a proper request to view it. To support his argument that the termination decision is irrelevant, Plaintiff Burk cites to the case of *Estabrook*. *Estabrook v. United States*, 41 Fed. Cl. 283, 285 (1998). *Estabrook* was notably not a 1983 action but was a contract dispute. The settlement agreement in *Estabrook*, unlike the settlement agreement that Plaintiff Burk signed, specifically stated that the suspension and debarment – which were the subject of the internal investigation in that case, not a termination like

here – would be terminated upon the signing of the settlement agreement. Plaintiff Burk's settlement agreement made no mention of vacating ATF's initial decision, distinguishing the situation from that in *Estabrook*. Additionally, *Estabrook* never analyzed whether an agency investigation is relevant evidence to present to a jury. Instead, the court in *Estabrook* held that when an agency determination is appealed and later ends in a settlement agreement, there is no claim or issue preclusion based on the initial determination. That is not at issue here.

Defendants are not arguing that Plaintiff Burk's initial termination precludes him from arguing that he was within ATF policy during his interaction with CPD or that he was terminated, in part, for other reasons. Plaintiff Burk controls the scope of his trial. He is arguing that he was operating within his duties as an ATF agent on July 7, 2020. Defendants must be permitted to veraciously investigate this claim and offer evidence to rebut it. The termination materials do just that. Plaintiff is also presenting to the jury that he is unable to work for ATF as a result of his shoulder injury. Defendants similarly must be permitted to rebut this claim, where evidence exists that the shoulder injury is not the sole reason for Plaintiff Burk's severance from ATF. Plaintiff is arguing that he suffers mental distress solely because of the time he spent detained by Columbus police. Plaintiff Burk's treating psychiatrist, however, attributes much of Plaintiff Burk's symptoms to his termination. Plaintiff cannot have it both ways. If he is going to present evidence to the jury that his mental health symptoms stem from the actions of the Defendant Officers, the Court must permit those Defendant Officers to present credible evidence that Plaintiff's symptoms are caused by his termination. Plaintiff Burk argues that the Defendant Officers acted unreasonably when they doubted Plaintiff Burk's status as a federal agent. ATF's internal conclusion that Plaintiff's conduct was unbecoming, and out of policy, of an ATF agent is relevant evidence to support the Defendants' argument that they were reasonably disbelieving of Plaintiff Burk's claim

that he was an ATF agent. To the extent that this evidence carries a risk of prejudicial effect, this does not substantially outweigh the relevance that the evidence has on multiple questions before the jury. Defendants detailed each of these relevant uses of evidence in their motions in limine. Because Plaintiff Burk has failed to demonstrate that the evidence is inadmissible for any purpose, any evidentiary rulings should be deferred until trial so that questions of foundation, relevance, and potential prejudice may be resolved in the proper context.

        *a. Plaintiff Burk's prior discipline is permissible pursuant to Fed. R. Evid. 608*

        Plaintiff Burk moves to exclude evidence of his prior discipline within ATF. The instances to which Plaintiff Burk refers are times when Plaintiff clandestinely swapped the price tags on bottles of wine so that he could purchase high-end wine at a low-end cost. Plaintiff would switch the price tags and then take the expensive bottle, with a cheaper price tag now on it, and proceed to make a purchase. Plaintiff was caught doing this and ATF performed an investigation into his conduct. Def. Trial Ex. Q. During this investigation, Plaintiff Burk admitted to using his government-owned vehicle ("GOV") to drive to and from Kroger where he would take the wine while on duty as an ATF agent. Id. ATF found Burk's behavior to be unbecoming of a federal agent and stated that "[u]sing your GOV to make fraudulent purchases of alcohol contravenes your duties as a Special Agent and show a clear lack of integrity. Moreover, your offenses were publicized in the media and have negatively impacted the reputation of the Bureau." Id.

        Plaintiff Burk argues that neither Fed. R. Evid. 609 nor Fed. R. Evid. 404 permits introduction of this evidence. Plaintiff fails to mention Fed. R. Evid. 608, the rule that governs this evidence. This rule, Fed. R. Evid. 608, does permit Plaintiff's prior conduct to be presented to the jury. Fed. R. Evid. 608 governs "a witness's character for truthfulness or untruthfulness." While Plaintiff is correct that Fed. R. Evid. 609 requires a conviction, Fed. R. Evid. 608 governs untruthful acts for which there is no conviction, like here. Fed. R. Evid. 608 states that "the court

may, on cross-examination, allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of [] the witness." Fed. R. Evid. 608. Untruthful statements and actions are the type of conduct that Fed. R. Evid. 608 permits into evidence. *EEOC v. Memphis Foods*, L.L.C., 2015 U.S. Dist. LEXIS 179859. The rule does not permit extrinsic evidence to be used in order to prove specific instances of conduct, like this one. Fed. R. Evid. 608; *United States v. McKenzie*, 2022 U.S. App. LEXIS 15035, 2022 FED App. 0211N (6th Cir.), 2022 WL 1744500.

Defendants should be permitted to cross examine Plaintiff Burk on his prior untruthful conduct as relevant evidence of Plaintiff Burk's character for untruthfulness. Defendants agree that they are not permitted to present extrinsic evidence to prove the untruthful conduct.

2. The testimony of expert Keith Leighton is relevant to rebut Plaintiff Burk's claims

Plaintiffs argue that Keith Leighton's testimony is not relevant to the legal analysis of comparative fault. Defendants agree. This is not why former Agent Leighton's testimony is relevant and it is not why Defendants are offering it. As stated above and as explained in Defendants' motions in limine, Plaintiff is presenting as fact that he was an ATF agent operating pursuant to his duties on July 7, 2020. If, however, Plaintiff Burk was not operating within his duties or was not operating appropriately as an ATF agent, his claim come into question.

Judge Graham correctly noted at the parties' status conference that all of the law enforcement officers in this encounter should operate under the same national policing standards. There is evidence that Plaintiff Burk was acting out of conformity with these standards, a scenario that the Defendant Officers had to interpret and reach to. Keith Leighton can explain to the jury that the national policing standards did indeed apply to Plaintiff during this encounter and can explain why federal agents are trained to follow these standards. Plaintiff Burk argues that Keith Leighton's testimony is not relevant because he is unfamiliar with the specifics of how a NICS

retrieval should be carried out by an ATF agent. Plaintiff has misquoted Agent Leighton's testimony. Leighton's testimony, where quoted by Plaintiff, was that he had "never been involved in the process" of a NICS retrieval. Leighton Depo. (Doc. 52-1, #277). Agent Leighton went on to say that he *does* have knowledge of the policies governing a NICS retrieval because he has knowledge of the policies governing any federal enforcement action, which a NICS retrieval is. "It could be a consent search, an arrest warrant, a search warrant, a NICS removal. These are all enforcement actions. We're trained how to respond, how to behave, in an enforcement operation." Leighton Depo. (Doc. 52-1, #288). Keith Leighton's testimony goes to rebut an issue that Plaintiff Burk has raised – namely, whether he was acting appropriately as a law enforcement agent. His testimony also goes to reinforce the Defendant Officers' testimony that, based on experience and expectations, they reasonably doubted Plaintiff Burk's verbal claim that he was a "federal fucking agent" when the encounter began.

The "issues" that Plaintiff points out with Keith Leighton's testimony are all matters of weight, not admissibility. Plaintiff is free to cross examine Keith Leighton on the reasons why they believe a jury should not give weight to his testimony but this does not make his testimony irrelevant.

3. Defendants' witnesses have not offered testimony regarding Plaintiff Burk's disability payments

Plaintiff moves to bar the admission of testimony regarding Plaintiff Burk's disability retirement payments. The fact that Plaintiff Burk claims to be disabled and is retired due to this disability is unquestionably relevant. Plaintiff has moved to exclude any evidence of payments related to this disability. The amount and frequency of those payments has only been mentioned by Plaintiffs' expert economist, Harvey Rosen. Defendants agree not to question Rosen, or other witnesses, on the amount or frequency of Plaintiff Burk's disability payments.

4. <u>The "quality" of other jobs available to Plaintiff Burk is an issue of weight, not admissibility, and should not serve to exclude the evidence</u>

Plaintiff moves to exclude testimony of vocational expert, Dr. Growick. To support his motion, Plaintiff cites to three cases. All three cases deal with employment discrimination, not a civil rights issue. *See Taylor v. Invacare Corp.*, 64 F. App'x 516, 523 (6th Cir. 2003); *White v. Honda of Am. Mfg., Inc.,* 191 F. Supp. 2d 933, 952 (S.D. Ohio 2002); *Hoback v. City of Chattanooga*, No. 1:10-CV-74, 2012 U.S. Dist. LEXIS 124794, at *36 (E.D. Tenn. Sep. 4, 2012). Two of these cases deal with post-trial motions for remittitur, not with whether the evidence of job availability is appropriate for trial. *See generally Taylor v. Invacare Corp.*, 64 F. App'x 516; *Hoback v. City of Chattanooga*, U.S. Dist. LEXIS 124794. While the courts in *Taylor* and in *Hoback* found that those defendants failed to meet the burden for remitting a jury verdict, the courts did not find that such evidence is irrelevant for a jury to consider. The court in *White* specifically concludes that "the issue of mitigation is for the jury." *White v. Honda of Am. Mfg., Inc.*, 191 F. Supp. 2d 933, 943-44. The court declined to strike an affidavit in that case, which purportedly showed that the plaintiff failed to mitigate her damages, because a jury should determine the issue of mitigation. *Id*. Where an issue is for the jury to decide, the jury must be shown the evidence in order to analyze that issue. Defendants have, obviously, not moved to remit a jury verdict at this time so the standards governing that issue are not ripe for consideration here.

Dr. Growick's testimony is relevant to two prominent issues in Plaintiff Burk's case. First, Dr. Growick provides testimony of Plaintiff Burk's ability to perform the essential functions of a law enforcement officer. Plaintiff Burk contends that he is physically restricted from working at ATF, due to the limitations of his shoulder. Dr. Growick's testimony goes to rebut that assertion. Dr. Growick offers opinions on whether an individual with Plaintiff Burk's injuries could still

6

perform the necessary tasks of a federal law enforcement officer. This is directly relevant to Plaintiff's claims.

Second, Dr. Growick provides evidence that, should a jury accept Plaintiff Burk's assertion that he is retired, that there are other jobs available to him in the realm of law enforcement without the use of Plaintiff Burk's shoulder. Whether those jobs are attractive to Plaintiff Burk is an issue for cross-examination. Following his severance with ATF, Plaintiff Burk made the choice to move from the mid-size city of Cincinnati to a small rural town in Tennessee. The job markets in these two places are different. The pool of jobs is different and the salaries are different in the two different parts of the country. These are matters that Plaintiff is able to cross examine on but they do not make the availability of jobs for Plaintiff Burk an irrelevant issue.

5. <u>Defendants should be permitted to cross-examine Plaintiff Burk's witnesses on the possibilities surrounding his mental health diagnoses</u>

Plaintiff moves this Court for an order restricting Defense expert LaRae Copley from testifying as to possibilities and to similarly prevent Defendants from cross-examining Plaintiffs' experts on what may be possible. Dr. Copley's conclusions in her report do not mention the word "possibility." Instead, all of her conclusions are stated to a reasonable degree of scientific certainty. Dr. Copley specifically states that her "opinions [] are based on knowledge derived from my education, training, and experience. They are based on my review of records cited earlier in this report as well as my own evaluation of Mr. Burk and offered with a reasonable degree of medical certainty." Copley Report (Doc. 115-1, #3093). These conclusions are proper.

Also proper is Defendants cross-examining Plaintiffs' expert witnesses on what may be possible. "While expert testimony on causation must be in terms of probability, on cross-examination reasonable possibility may be used to impeach or to challenge the expert's theory when supported by evidence or facts in the case. *Staley v. Allstate Prop. Cas. Ins. Co.*, 2013-Ohio-

3424, 2013 Ohio App. LEXIS 3514, 2013 WL 4009425 (citing Stinson at 456). Defendants are not required to put on testimony about the cause of an injury and are not required to provide an alternative theory about causation. Instead, defendants may "rely on cross-examination to negate the plaintiff's evidence of proximate causation." *Harrod v. USAA Ins. Co.,* 2019-Ohio-2748, 140 N.E.3d 184, 2019 Ohio App. LEXIS 2869, 2019 WL 2896239 (citing Sta*ley v. Allstate Property Cas. Ins. Co.*, 10th Dist. Franklin No. 12AP-1085, 2013-Ohio-3424, ¶ 33); Stinson at 455-56; *see also Shadle v. Morris*, 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906, ¶ 33-38. Questioning about Plaintiff Burk's pre-existing conditions is relevant to both damages and causation. *Leroy v. Morinda USA, Inc.*, 2017 U.S. Dist. LEXIS 165946, 2017 WL 4456881.

Dr. Copley should be permitted to testify to her conclusions, which are reached to a reasonable degree of scientific certainty. Defendants should also be permitted to cross-examine Plaintiff's experts about reasonable possibilities that are supported by the evidence in this case.

Respectfully submitted,

/s/ Alexandra N. Pickerill
Alexandra N. Pickerill (0096758) – Lead
Sheena D. Rosenberg (0088137)
Sarah N. Feldkamp (0099464)
Assistant City Attorneys
CITY OF COLUMBUS, DEPARTMENT OF LAW
ZACH KLEIN, CITY ATTORNEY
77 N. Front Street, Columbus, Ohio 43215
Phone: (614) 645-7385 / Fax: (614) 645-6949
anpickerill@columbus.gov
sdrosenberg@columbus.gov
snfeldkamp@columbus.gov

*Counsel for Defendants Joseph Fihe and Kevin Winchell*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 29, 2024, I electronically filed the foregoing with the Clerk of the Court by using this Court's CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

/s/ Alexandra N. Pickerill
Alexandra N. Pickerill (0096758)